

FILED
1/5/2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE THE MATTER OF: | ) | |
| | ) | |
| TRIANO WILLIAMS | ) | |
| | ) | |
| **Plaintiff,** | ) | **16CV _____** |
| | ) | |
| | ) | **Hon. Judge** |
| vs. | ) | **Maj Judge** |
| | ) | |
| AMERICAN COLLEGE OF EDUCATION, INC., | ) | |
| SHAWNTEL LANDRY, In her Individual Capacity, | ) | |
| HOWARD ROUSE, in his Individual Capacity, and | ) | |
| KK BYLAND, in her Individual Capacity, | ) | |
| Defendants. | ) | |

## COMPLAINT

      **COMES NOW THE PLAINTIFF**, **TRIANO WILLIAMS** by and through his counsel, Calvita J. Frederick and Associates, and complaining of the Defendant AMERICAN COLLEGE OF EDUCATION, INC., SHAWNTEL LANDRY, in her Individual Capacity, HOWARD ROUSE, in his Individual Capacity, and KK BYLAND, in her Individual Capacity, alleges as follows:

## THE PARITES

1.      PLAINTIFF TRIANO WILLIAMS**.** ("Williams" or "Plaintiff") is a male, black citizen of the United States, and at all times relevant thereto was a resident of the City of Riverdale, County of Cook and the State of Illinois.

2**.**      DEFENDANT AMERICAN COLLEGE OF EDUCATION ("ACE" or Defendant(s)"), is an Illinois corporation, licensed to do business within the State of Illinois, with its principal place of business located at 101 West Ohio Street, Suite 1200, Indianapolis, Indiana.  ACE employs more than 100 people in total and more than 15 people within the State of Illinois. ACE provides online graduate and professional programs for educators.  ACE'S faculty, administration and students reside throughout the United States.

1

3. DEFENDANTS, SHAWNTEL LANDRY ("Landry" or "Defendants"), HOWARD ROUSE ("Rouse" or "Defendants'), and KK BYLAND ("Byland" or "Defendants") are all agents, servants and/or employees of ACE, who were managers and/or supervisors of Plaintiff.

## JURISDICTION AND VENUE

4. The claims against the Defendants herein are based upon race discrimination (Black) pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981 which prohibits discrimination on the basis of race and further prohibits retaliation for opposing or making charges regarding discrimination.

5. Jurisdiction is conveyed upon this Court as the claim arises under the laws of the United States of America pursuant to 28 U.S.C. § 1343

6. Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 as Williams' residence, and Defendant's place of incorporation, as well as all events giving rise to this claim occurred within the counties served by this Court.

## FACTS RELEVANT TO ALL COUNTS

7. Williams was hired by ACE as a Desktop Support employee for Information Technology, on or about September 10, 2007.

8. At all times material to this complaint, Williams proved his industriousness, presented and represented himself in an orderly and respectful manner and commanded and continues to command the respect of his fellow employees. Additionally, Williams demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

9. In 2012, his position was changed to Integration Systems Support and in 2013 his title was once again changed to Systems Administrator. The changes in title/positions and responsibilities did not include a commensurate increase in salary.

2

10.     In addition, Williams purportedly worked a 9am-5pm shift, but in reality, he worked nearly 60 hours most weeks, including time spent on call on weekends and holidays.

11.     Most recently, Williams operated under a written contract agreement with ACE that provided for his salary, bonus and his ability to work remotely from his home in Illinois.

12.     Working remotely from his home in Riverdale, Illinois was a requirement of employment communicated to ACE by Williams because Williams has in place and is subject to a Court ordered, Joint Parenting Agreement that requires him to co-parent his seven-year old daughter, including transporting her to and from school several days a week and extensive visitation on the weekends.

13.     Rick Gahering (Caucasian male) was hired with less experience and less education, but was always paid more than Williams, for doing the same or similar work with fewer responsibilities than required of Williams. On or about February 11, 2016 ACE promoted Rick Gahering who had less seniority than Williams, to the position of manager over Williams.

14.     Williams complained about the promotion of Rick Gahering over Williams and numerous other discriminatory actions at ACE in a letter addressed to Landry, and Byland.  (See "ACE Culture Letter attached hereto as Exhibit "A")

15.     Thereafter Williams was required to track all of his duties and time in fifteen minute increments. Only Williams and one other African American employee Hynes were subjected to this scrutiny.

16.     On February 18, 2016, Williams was advised he must relocate to the ACE Indianapolis location to work directly out of the corporate office or face termination. (See Letter from Howard Rouse, ACE CFO to Triano Williams, dated February 18, 2016 and attached hereto as Exhibit "B"). The February 18, 2016 letter attempted to bully Williams into accepting a separation

3

agreement that was inadequate from a financial standpoint and further required Williams to agree

that his termination was a voluntary resignation.   According to Exhibit B, Williams had until

February 24, 2016 to accept the Special Separation Benefits and sign the General Release.  Julia

Moses (White female) was still allowed to work remotely from Texas but both Williams and

Rommell Hynes (Black male) were terminated purportedly over the relocation issue.

17.     The Special Separation Benefits and General Release also required Williams to give up

any rights he might have to file a complaint about his treatment while an employee of ACE.  In

addition, Williams would not be able to provide testimony as to the unfair treatment of any other

ACE employee once he "voluntarily resigned".  (See Exhibit "B").

18.     On February 18, 2016 Williams also received a letter from Byland.  (See Byland Letter

attached hereto as Exhibit "C") Byland's letter added additional terms and conditions for

Williams' relocation to Indianapolis.

19.     On February 23, 2016, Williams received another letter from Rouse containing the same

Special Separation Benefits and General Release except Williams was given until March 1, 2016

to accept Special Separation Benefits and sign the General Release.  (See February 23, 2016

Letter attached hereto as Exhibit "D").

20.     The Special Separation Benefits and General Release which ACE attempted to force

Williams to take not only violates the current employment agreement between Williams and

ACE as to his remote access to work, but also would cause him to violate a court ordered Joint

Parenting Agreement as to his minor child.

21.     Williams is not the first ACE employee that has been unfairly treated and forced out of

employment with ACE, based upon race, sex, religion or other unlawful criteria.

4

22.     Upon information and belief, Dr. Linetta Durand, a Seventh Day Adventist and former employee of ACE, was pressured by ACE into working a Saturday ACE event, which violated her religious beliefs.  With the assistance of counsel, and based upon information related to an accommodation for a former ACE employee who was a Jewish, white male, Dr. Durand reached an amicable settlement with ACE for her charges of discrimination based upon race and religion.

23.     Upon information and belief, Amber Ying also received a settlement from ACE for a claim related to discrimination based upon race in a failure by ACE to promote her.

24.     On or about February 25, 2016, Williams filed EEOC Charge 470-2016-01138. (See Charge attached hereto as Exhibit "E")

25.     On or about February 29, 2016, Williams received a telephone message from Landry and/or Byland advising him that he should no longer report to work, effective February 29, 2016, one day before the expiration of the time given Williams to accept or reject the Special Separation Benefits and General Release.  Hynes was terminated earlier that same day.  At the same time, ACE restricted Williams' access to the ACE computer systems necessary for Williams to perform his work.  Williams was further advised that he should spend the remaining time, until April 1, 2016, looking for other employment. Williams was also required to return his ACE issued laptop computer and other school equipment to ACE, which equipment Williams returned to ACE via their own shipping instructions.

26.     At the time of Williams termination from ACE, ACE had a Google domain account.

27.     The Google domain account was set up by another employee of ACE and. Williams *was* given a College email account.  Although Williams was one of the Administrators with access to this system, he was never the Super Administrator.

28.     As a result of ACE's separation from its parent company, and the separation from ACE employment of all other Administrators connected to the Google student email and course work system, apparently, Williams was the sole remaining Administrator when ACE decided to terminate him and lock him out of ACE's Google email system.

29.     The login ID and password used by Williams to access the Google email account were AutoSaved on Williams' laptop computer which was returned to ACE, per their request.

30.     At some point in June of 2016, ACE became aware that they could not access their Google domain, student emails and course work accounts.

31.     ACE through several of its employees and administrators contacted Williams and asked his assistance in resolving the issue, which requests were refused by Williams, who was no longer an ACE employee.  ACE offered no compensation to Williams for the task they wanted him to perform after termination.

32.     ACE has faced a similar situation with an ex-employee Eric Korb (White male) whose services were needed after termination from employment by ACE.  Upon information and belief, ACE paid Korb a sizable consultant fee to perform the task needed by ACE. In addition, ACE may have provided the same agreement for Rouse.

33.     Thereafter ACE through their Indiana counsel filed a lawsuit in the State of Indiana, Marion Superior Court in Indianapolis, as further retaliation against Williams, seeking to force his return to employment for ACE, without any offer or even suggestion of payment.

34.     The lawsuit filed by ACE against Williams charged Williams with Intentional Interference with a Contractual Relationship, Violation of the Indiana Uniform Trade Secret Act, Conversion, Offense Against Intellectual Property, Breach of Fiduciary Duty, and Criminal

Mischief. (See Verified Complaint for Injunctive Relief and Damages attached hereto as Exhibit "F")

35.     In addition, the Indiana state court action sought a Temporary Restraining Order, and a Preliminary and Permanent Injunction requiring Williams to provide ACE with the user name and password for the Google account or in the alternative to force Williams to contact Google and have the administrative account turned over to ACE's President.

36.     Williams is not and has never been a resident of Indiana, nor has he ever worked at the Indianapolis ACE location.

37.      Notwithstanding lack of jurisdiction, upon information and belief, ACE has proceeded with the Indiana state court action and had numerous Orders entered against Williams, including but not limited to the August 3, 2016 Order Granting Plaintiff's Motion for Emergency Order to Show Cause For Failure to Comply With The Temporary Restraining Order, which Order threatened Williams, inter alia, with incarceration. (See August 3, 2016 Court Order attached hereto as Exhibit "G")

38.     ACE's attorneys, the law firm of Jackson Lewis, has offices in Chicago, Illinois which office handles employment and workplace related litigation.

39.     ACE chose to file their retaliatory lawsuit in Indianapolis, Indiana, when the case could have been filed in Illinois.

40.     Williams has been unemployed since April of 2016 when his employment with ACE was terminated and cannot bear the cost of defending an action in Indiana. Williams' counsel herein is not licensed to practice law in Indiana and efforts to obtain pro bono counsel in Indiana have proven unsuccessful.

42.    Justice and convenience favors the transfer/removal of the Indiana state court action to this court.

43.    Defendants' discriminatory treatment of Williams included but is not limited to:

(A)    Subjecting Williams to disparate treatment by paying Williams less that his Caucasian co-workers who are not African American and who performed the same job duties or some who had fewer job responsibilities than Williams, based upon race;

(B)    Allowing Williams to function as interim manager when the department manager was out of the office, but then failing to promote Williams when the department manager position became available, choosing to promote a Caucasian employee with less seniority, credentials and experience, all based upon race;

(C)    Holding secret meetings to hide the discriminatory promotion schemes from Williams;

(D)    Fabricating a pretextual reason to terminate Williams when the real reason was Williams' complaints about discriminatory treatment of himself and others in ACE'S employ;

(E)    Requiring Williams to relocate to Indianapolis when ACE knew that Williams could not leave Illinois because of his joint parenting court ordered obligations;

(F)    Failing to allow Williams and other African Americans to participate in work-related training offered to non-Black employees and necessary for enhancement of job performance, based upon race;

(G)    Creating a hostile and offensive, humiliating work environment for Williams and other African American employees of ACE by demoting and/or stripping African Americans of their work titles and reducing their pay;

(H)    Bullying and attempting to force Williams to agree to a voluntarily resignation;

(I)    Bullying and attempting to force Williams to give up his rights to complain about discrimination, a protected activity;

(J)    Bullying and attempting to quash Williams' right to speak up about the discriminatory treatment of others that Williams had witnessed:

(K)    Demanding under threat of lawsuit and incarceration that Williams work for ACE for free to resolve problems created by ACE after Williams was terminated from ACE's employ;

(L)     Refusing to offer to pay Williams for work ACE needed done after termination, when ACE has paid White ex-employees under similar circumstance; and

(M)     Terminating Williams and Hynes for refusal to relocate, but allowing Moses to continue to work remotely from Texas.

44.     As a result of ACE'S actions toward Williams, Williams was subjected to a hostile work environment and disparate treatment from his non-Black co-workers.

45.     Once Williams complained about discriminatory treatment, Defendants began a pattern and/or practice of behavior against him designed to and did result in his termination.

46.     The disparate treatment Williams was subjected to while employed at ACE, created a hostile, intimidating and uncomfortable work environment for Williams

47.     ACE did not subject other similarly situated non-Black ACE employees to the hostile, intimidating and uncomfortable work environment they created for Williams.

48.     On February 29, 2016, (fully effective April 1, 2016) Williams was discharged.  The reason given by ACE was that Williams would not relocate to Indianapolis.

49.     The reason given by ACE for Williams' termination was a pretext as certain non-Black employees were allowed to continue to work remotely: the real reason that Williams was terminated was retaliation for engaging in a protected activity, including complaining about discriminatory treatment of Williams and other ACE employees.

50.     At all times pertinent hereto, Williams met the legitimate objectives of his work assignments, and got along with management and his fellow employees as best he could.

51.     Similarly situated non-Black employees with performance comparable to Williams were not discharged.

52.     Upon information and belief, ACE replaced Williams with a non-black employee.

9

## COUNT I

## VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE AGAINST ACE

53      Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through

52 above.

54.     Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment

practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

> "(a) **Employer practices**
> It shall be an unlawful employment practice for an employer—
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or privileges of employment, because
> of such individual's race, color, religion, sex, or national origin;"

55.     Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination

based upon race with the Illinois Department of Human Rights and the Equal Employment

Opportunity Commission, a true and correct copy of which is attached to this complaint as

Exhibit "H".

56.     Plaintiff has filed this cause pursuant to a "Right to Sue Letter" issued by the Equal

Employment Opportunity Commission within the statutory time requirement, a true and correct

copy of which is attached to this complaint as Exhibit "I". Plaintiff's counsel received the Right

to Sue Letter on or about October 3, 2016.

57.     Plaintiff, at all times pertinent to this complaint, was a resident within the venue and

jurisdiction of this judicial district, and was within the protected race group (Black) as provided

by the Title VII.

58.     The Defendant at all times relevant to this complaint, operated and did business within

the venue and jurisdiction of this judicial circuit.

10

59.     During the course of his employment the Plaintiff came under the supervision of certain ACE employees including Landry, Rouse, and Byland, who subjected Williams to differential terms and conditions of employment because of his race.

60.     The Defendant ACE'S conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race in direct violation of Title VII.

61.     As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and to his person and has otherwise suffered monetary damages.

WHEREFORE, Plaintiff TRIANO WILLIAMS, demands judgment against the Defendant, ACE, as follows:

    A.      For retroactive reinstatement to his employment position at the time of termination with all back pay, benefits and other emoluments of employment;

    B.      For an award of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

    C.      For attorney's fees and costs of this suit, pursuant to applicable statute; and

    D.      For such other and further relief, as is just and equitable


## COUNT II: RETALIATION

Plaintiff realleges and incorporates by reference paragraphs 1 through 52 inclusive.

62.     Plaintiff was bullied and threatened by his supervisors and ACE management, Landry, Byland and Rouse, subjected to racial, intimidating and derogatory treatment, subjected to different terms and conditions of employment, punished for complaining about disparate treatment of himself and others, refused promotions, refused training, given conflicting and contradictory information about the promotion of others, forced to relocate when Defendants

knew he couldn't leave the jurisdiction, terminated in retaliation for opposing and making charges regarding conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a), and sued in a foreign jurisdiction, for his refusal to submit to bullying and adhere to the demand of ACE to return to ACE's employment, fix a problem ACE created and receive no compensation.

63.    As alleged above, these actions occurred shortly after February 11, 2016, when Plaintiff lodged a complaint with ACE'S management about the toxic discriminatory and humiliating environment at ACE for African American employees. (See Exhibit "A")

64.    A reasonable person in Plaintiff's position would find the Defendants' actions materially adverse.

65.    Defendants acted willfully and in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendants ACE, Landry, Rouse and Byland for termination and lost wages and benefits, compensatory damages, punitive damages, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

## COUNT III
## VIOLATION OF 42 USC § 1981

66.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 52 above.

67.    The claims against the Defendants herein are based upon discrimination based upon race.

68.    Jurisdiction arises pursuant to 28 U.S.C. § 1343.

69.    Venue is appropriate as Williams' residence, and Defendants business, as well as all events giving rise to this claim occurred within the counties served by this Court.

70.    Title 42 U.S.C. § 1981 provides in pertinent part:

"(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination …"

71.    At all times herein mentioned, Williams was a person protected by the provisions of 42 U.S.C. § 1981.

72.    ACE, Landry, Rouse and Byland deprived Williams of his right to make and enforce contracts granted to him by statutes of the United States when they deliberately and intentionally discriminated against him based upon his race by setting in place a campaign designed to, and did, result in Williams' termination.

73.    Defendants ACE, Landry, Rouse and Byland maintain a widespread practice of treating Black employees, (based upon their race) and especially Williams, less favorably than his co-workers who are not Black.

74.    Although the practice is not authorized by written law or express company policy, the practice of discrimination in the nature of disparate treatment and the creation of a hostile work environment is so permanent and well-settled at ACE as to constitute a custom and/or usage with the force of law.

13

75.     Defendants ACE, Landry, Rouse and Byland's practices represent a widespread practice of racial discrimination, especially towards Blacks.

76.     Williams has been treated less favorably than his colleagues because he is Black and because of an existing, unwritten, unconstitutional policy, which is directly attributable to a final policymaker.

77.     The final policy makers for Defendant ACE include Landry, Rouse and Byland and other members of management.

78.     Williams alleges a pattern of conduct that gives rise to a plausible claim that an unconstitutional custom, pattern or practice exists.  Specifically Blacks who occupy the position of IT Systems Administrator or higher are treated differently, and denied the same opportunities as their Caucasian counterparts because of discriminatory animus and intent.

79.     This supports Williams' claim of having suffered adverse employment actions by conduct tantamount to bullying, arbitrary and inconsistent directives, demeaning and humiliating assignments, impossible workloads, intentional and public humiliation of Williams and others, refusal to provide training, unwarranted scrutiny/discipline, and finally, termination.

80.     Williams has been employed by ACE since September 7, 2007, when he entered into an agreement for employment with ACE.

81.     Plaintiff at all times material to this complaint proved his industriousness, presented and represented himself in an orderly and respectful manner and commanded and continues to command the respect of his fellow employers.  Additionally, Williams demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

82.     Rather than support Williams in his position of IT Systems Administrator, Defendants intentionally discriminated against Williams by refusing to allow Williams to participate in work

related training; paying Williams less that his co-workers, subjecting Williams to unwarranted scrutiny, refusing to promote Williams to management, all the while requiring him to perform the job of manager, holding secret meetings so as to hide the promotion of others from Williams, making it uncomfortable, humiliating and almost impossible for Williams to do the job he was assigned to do.

83.     Defendants intentional discriminatory animus was further displayed in their insistence that Williams relocate to Indianapolis, knowing that Williams was under a court ordered joint parenting agreement and that working remotely was a condition under which he took the job with ACE, and using the refusal of Williams to relocate as a pretext to terminate him, when the real reason for the termination was Williams complaints about defendant's discriminatory activities.

84.     Landry, Rouse and Byland's intentional discrimination interfered with Williams' right to enforce his agreement with ACE including the performance, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, and the wrongful termination of that contract.

85.     As a result of the Defendants ACE, Landry, Rouse and Byland's discrimination based upon race, Williams has suffered injury to his career, as well as emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life, and other losses for which he is entitled to compensatory damages in accordance with 42 U.S.C. § 1981.

WHEREFORE, Plaintiff Williams demands judgment against the Defendants, ACE, as follows:

A.      Actual damages in the amount of lost wages and back pay from April 1, 2016 to present or the date of Williams' re-employment;

15

      B.      Compensation for loss of employee benefits, including medical, dental, life, 401K, pension, stock options and retirement benefits;

      D.      Additional compensatory damages for Plaintiff's mental anguish, pain, and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

      E.      Additional compensation for damages to and the loss of Williams' career;

      F.      For punitive damages;

      F.      All reasonable and necessary attorney's fees incurred as specified;

      H.      All costs of court; and

      I;      Such other and further relief as this court deems just and proper.

## COUNT IV
## VIOLATION OF 42 USC § 1981 – DISCRIMNATION AGAINST DEFENDANTS LANDRY, ROUSE AND BYLAND IN THEIR INDIVIDUAL CAPACITY

86.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 52 above.

87.    Williams was deprived of his rights to make and enforce contracts granted to his by statutes of the United States by Defendants Landry, Rouse and Byland when they deliberately and intentionally discriminated against his based upon his race by setting in place a campaign designed to result in Williams' termination.

88.    Defendants Landry, Rouse and Byland were the proximate cause of Williams' harm.

      WHEREFORE, Plaintiff Williams demands judgment against the Defendants Landry, Rouse and Byland in their individual capacity, as follows:

      A.      Actual damages in the amount of lost wages and back pay from April 1, 2016 to present;

B.      Compensation for loss of employee benefits, including medical, dental, life, 401K, pension, stock options and retirement benefits;

D.      Additional compensatory damages for Plaintiff's mental anguish, pain, and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

E.      Additional compensation for damages to and the loss of Williams' career;

F.      For punitive damages;

F.      All reasonable and necessary attorney's fees incurred as specified;

H.      All costs of court; and

I;      Such other and further relief as this court deems just and proper.

## COUNT V: VIOLATION OF TITLE VI

Plaintiff restates and realleges each and every allegation contained in Paragraphs 1-52 and 62-65.

89.     Jurisdiction is conferred on this Court by 28 USC Sec 1332 and 28 U.S.C.A. Sec. 1343 (a) (3).

90.     Title VI of the 1964 Civil Rights Act provides in pertinent part:

"Nondiscrimination in federally assisted Program.   No person in the United States shall on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance."  42 U.SC. Sec 2000 et. seq.

91.     Upon information and belief, ACE accepts and receives funding from the State of Illinois and other sources, including directly from the federal government for educational student scholarships, grants and loans.

17

92.     Said funding includes federal and state funds through the U.S. Department of Education and other sources, and is a form of financial assistance, which ACE receives and accepts from the federal government. Upon information and belief, much of the federal assistance in the nature of scholarships, grants and/or loans is based upon the minority status of ACE's student body.

93.     Since 2007, Defendants hired and promoted less qualified and experienced Caucasians than Plaintiff to the position of IT Systems Administrator and Manager and paid them more money than Plaintiff, based upon race.

94.     Since 2007, Defendants have failed and refused to promote the Plaintiff and other well qualified Black employees to the position of Manager and above, although they have required Plaintiff to act as interim manager when the Department Manager was off duty or otherwise unavailable.

95.     Despite Plaintiff s superior experience and qualifications and his numerous requests, Plaintiff has not been offered the position of manager.  The Plaintiff was also subjected to the following treatment:

        a.      Improperly denied numerous opportunities for work related training, because Plaintiff is Black;

        b.      Forced to relocate to Indianapolis as a pre-text to terminate Plaintiff;

        c.      Subjected to intimidating threatening statements made by his White co-workers and managers;

        d.      Retaliated against for engaging in protected activities; and

        e.      Subjected to numerous and repeated efforts to bully him into a voluntary resignation, relocation to Indiana and working for free.

96.     That Defendants treat similarly situated employees who are not Black differently.

97.     Plaintiff repeatedly reported the incidents to ACE'S Department of Human Rights to no avail.

98.     That each time Plaintiff filed a complaint or reported an incident of discriminatory treatment he was further harassed and intimidated.

99.     The treatment of Plaintiff and other Blacks made in the presence of other employees and/or reported to ACE were racially motivated and was an attempt to subject Plaintiff a Black man, to discriminatory treatment.

100.     In requiring Plaintiff to endure discriminatory treatment Landry, Rouse and Byland's actions were all based upon race, were willful, malicious and in bad faith, with an improper motive of subjecting Plaintiff to abuse with a malicious intent of violating Plaintiff's civil rights.

101.     As a proximate result of Defendants Landry, Rouse and Byland's racial discrimination toward Plaintiff, Williams suffered damages in the disruption of employment, harm to his career, unnecessary and unsupported termination, emotional distress, embarrassment, psychological damage, and the deprivation of his civil rights.

102.     Landry, Rouse and Byland's actions occurred while acting in their official capacity as agents servants and/or employees of ACE.

103.     Landry, Rouse and Byland's actions and those of the other ACE management employees are imputed to ACE.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays as follows:

A.     A declaratory judgment that Defendants and each of them violated 42 USC Sec. 2000.

19

B      A permanent injunction-restraining Defendants and each of them, from violating 42 USC Sec. 2000.

C.      Compensatory damages in the sum total in excess of $75,000 for lost wages, emotional distress, psychological damage, embarrassment, deprivation of civil rights and out of pocket expenses.

D.      Punitive damages in an amount equal to 2% of Defendants' combined net worth.

E.      Reasonable attorneys' fees and all costs of the proceeding


## COUNT VI
## NEGLIGENT SUPERVISION AGAINST ACE

104.   Plaintiff restates and realleges each and every allegation contained in Paragraphs 1-52.and Paragraphs 62-65 as though fully set forth herein.

105.   Defendants failed to train, supervise, and monitor their employees, agents, and servants despite their duty to do so.

106.    At all material times, Defendants, and each of them, had the power, ability, authority and duty to supervise, control, and train their employees, agents and servants.

107.   Defendants knew or should reasonably have known that their agents, servants, and employees were not adequately trained to protect the Plaintiff and prevent the discriminatory treatment of Williams initiated at the suggestion and hands of his supervisors.

108.    Defendants knew or should reasonably have known that such lack of training would proximately result in the disparate and discriminatory treatment of Williams and subsequent termination of Williams' job resulting in injury and emotional distress to Plaintiff.

109.   Despite such duty and reasonable knowledge, Defendants failed to supervise, control and train their agents, servants, and employees.

20

110.    At all material times Defendants had the power, ability, authority, and duty to intervene, supervise, prohibit, control, regulate, discipline, and/or penalize the conduct of their agents, servants, and employees so as to prevent injury to the Plaintiff.

111.    At all material times, Defendants knew or reasonably should have known that Landry, Rouse and Byland's and other ACE personnel were engaging in the above-mentioned acts and omissions, that they were not adequately trained to protect Plaintiff's from abuse and retaliation, and that such acts and omissions and such lack of training would proximately result in termination, injury and emotional distress to Plaintiff.

112.    Despite their duty to supervise their agents, servants and employees, Defendants negligently failed to act so as to prevent such termination and injury to Plaintiff.

113.    As a proximate cause of the acts and omissions of Defendants, and each of them, Plaintiff was subjected to wrongful termination, and injury to his career, including but not limited to that described above and emotional distress.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff's and each of them respectfully prays as follows:

A.  For entry of an award of compensatory damages against Defendants and each of them in an amount equal to the loss of income and expenses related to the wrongful termination.

B.  For entry of an award of punitive damages in an amount equal to 2% of Defendants' combined net worth.

C.  For legal interest on such sums from the date of judgment until paid.

D.  For such other and further relief as this Court deems just and proper.

Respectfully submitted,

TRIANO WILLIAMS

By;    <u>s/ Calvita J. Frederick</u>
        Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001

KK, Shawntel, James

Feb 11, 2016

I hope writing this does not put me in danger of any type of employment retaliation, but I have been pondering submitting my concerns in the employee survey and at other times. Most of those in the very small African American population of the college feel they can never answer these surveys honestly because they worry about compromising their jobs.

The culture of American College of Education (ACE) has become very toxic over the last 6 months and seems to affect only the African American demographic of our college. I know our HR manager is relatively new and may not know the history of the college regarding a few past discriminatory practices that were resolved by legal actions. The culture had improved slightly over the years but seems to be reverting back, but if records are reviewed in regards to pay, promotions, treatment, and the request for training being denied and/or overlooked while others in similar circumstances are accommodated in the areas mentioned. It is also evident that these overlooked individuals are rarely ever truly addressed; matters are never resolved and are basically dismissed. With the seemingly systematic removal, or actual demotions (staff being removed from their previously held positions, being stripped of their previous titles and at time salaries and placed in lower ranking positions with lower pay) and constructive demotions (people who have no qualifications or skills in an area being promoted over truly qualified people to control those people and the departments) has created a feeling of intimidation as well as lowered the morale of the small African American population here at ACE. This feeling stretches across all departments and grows stronger each time these actions take place.

I suggest that all members of upper and middle management at the company take diversity and sensitivity training. Examine the company structure to see how there is really no diversity in upper management and how the pattern of discrimination is getting worse, and that people are taking notice and looking for help in different areas to figure out how to protect themselves against these issues. I have sat on this letter since the Feb. 11th on my birthday when it seems Rommel and I was left out the loop of Rick taking over for Jordan and a new network person also coming in. I had caught word of it the day before but it was clear in our IT meeting that Rick was in charge and Julia and Jordan knew about it but Rommel and I were left in the dark yet again. When I asked was there some changes in our positions twice I was ignored. Only to find out what we had discovered was true on Friday Feb 12th 2016. Nothing against Rick at all but the way it was went about is once again seems to be part of this culture that quietly spoke of that we have seen and been affected by over the years.

As a long time and proud employee of the college who loves ACE, I find such negative actions very disappointing and cause unnecessary stress. I hope my concerns are taken seriously and recorded in record to help be part of the solution and not fall by the waist side only adding to the problems.

Thanks for reviewing my concerns

*Triano A. Williams M. Ed.*

Triano A. Williams



**AMERICAN COLLEGE**
*of*
**EDUCATION®**

February 18, 2016

***BY EMAIL DELIVERY***

Triano A. Williams
14115 S. Wabash Ave
Riverdale, IL 60827

Dear Triano:

Due to your decision not to relocate to Indianapolis, your employment with American College of Education, Inc. ("ACE") will conclude effective as of the close of business, April 1, 2016 (the "Separation Date"). This letter confirms ACE's offer and, by your signature below, your acceptance of this proposed Separation Agreement (the "Agreement"). On behalf of ACE, I want to thank you for your prior service and wish you success in your future endeavors.

### Pay and Benefits You Will Receive Regardless of Whether You Sign and Return This Agreement

Regardless of whether you elect to receive the Special Separation Benefits described below by signing this Agreement, you have received or will receive the following pay and benefits:

- Payment of your regular base salary through the Separation Date;

- Payment of accrued and unused paid time off; and

- As of May 1, 2016 ACE shall provide health benefits to you via COBRA in accordance with the ACE medical plans and applicable law. The COBRA information and election notice shall be delivered to you in accordance with applicable law.

The amounts paid under this section are gross amounts, subject to lawful deductions, including any deductions you have previously authorized.

### Special Separation Benefits If You Sign and Return This Agreement

If you sign and return this Agreement, you will receive wages in lieu of notice in the gross amount of **$14,843.28** which is the equivalent to twelve (12) weeks of your regular salary. This amount is a gross amount, subject to lawful deductions, and will be paid to you in one lump sum payment on the immediate payday following the Separation Date. The separation compensation and outplacement services are collectively referred to herein as the "Special Separation Benefits."

Williams
Page 2

The Special Separation Benefits specified in this Agreement will be provided to you on the express condition that you have executed this Agreement and delivered a copy of this Agreement to ACE in accordance with the terms of this Agreement, that you have fulfilled all your obligations under this Agreement, that you have not violated any of the requirements or prohibitions set forth in this Agreement, and that you have met all other specific conditions for the receipt of any particular payment set forth in any paragraphs in this Agreement.

By executing this Agreement, you acknowledge and agree that ACE has no legal obligation to provide the Special Separation Benefits to you and that the Special Separation Benefits is in addition to anything of value to which you are already entitled. You also acknowledge and agree that your acceptance of the Special Separation Benefits and attendant obligations as described in this Agreement is in consideration of ACE promises and undertakings set forth in this Agreement. You also acknowledge and agree that ACE obligations owed to you pursuant to your employment with ACE, and your participation in its benefit plans, if any, and that no additional sums are owed to you by ACE or any of the other Released Parties for any reason.

### What You Must Do to Receive
### the Special Separation Benefits

ACE's offer of the Special Separation Benefits will expire at **5:00 p.m. on February 24, 2016**. You may accept this offer at any time before expiration by signing this letter in the space provided below, and returning it to Human Resources. Please read the General Release below carefully and seek the advice of legal counsel, if you desire, before making your decision.

Williams
Page 3

### General Release

You understand that various state and federal laws and regulations prohibit employment discrimination based on age, race, sex, color, national origin, religion, disability, citizenship, and membership or application for membership in a uniformed service, and that the law also prohibits breach of contract (express or implied) and intentional or negligent tortious conduct.

**In consideration of the Special Separation Benefits described above, you hereby release and discharge (i) ACE; (ii) any of ACE's affiliated entities; (iii) Randy Best, or any other past or present owner, officer, director, or other employee of the entities just named in their individual and official capacities; or (iv) any fiduciary, agent, representative, insurer, attorney, or any successors and assigns of the entities and individuals just named (collectively the "Released Parties") from, and waive to the maximum extent permitted by law, any and all claims, liabilities, demands, and causes of action, known or unknown, fixed or contingent, which you may have or claim against them. This General Release includes but is not limited to any and all claims arising under federal, state, or local laws prohibiting employment discrimination, including but not limited to; the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964, as amended; the Family and Medical Leave Act of 1993; the Employee Retirement Income Security Act; claims for retaliation under the Fair Labor Standards Act of 1938; the Equal Pay Act; the Consolidated Omnibus Budget Reconciliation Act of 1986; the Pregnancy Discrimination Act; the Lilly Ledbetter Fair Pay Act; the Fair Credit Reporting Act; the Employee Polygraph Protection Act; Chapter 21 of the Texas Labor Code; Chapter 451 of the Texas Labor Code; the Texas Payday Act; any other provision of the Texas Labor Code; The Illinois Human Rights Act, as amended, the Illinois wage payment statute and any other Illinois wage law, all as amended; any other federal, state or local law or regulation; and any and all other claims growing out of any legal restrictions, contractual or otherwise, on ACE's right to terminate the employment of its employees; and any and all claims arising out of your employment with ACE or as a result of the conclusion of your employment. This General Release does not waive any rights or claims that may arise after the date this Agreement is executed. You further acknowledge and agree that by accepting the Special Separation Benefits offered to you, you have given up your right to file any complaint, lawsuit, or other legal action to assert any such claim, subject to the exception noted in the section entitled "Acknowledgment" set forth below.**

### Nondisparagement

You will not make to any other persons or entities any statement, oral or written, which directly or indirectly impugns the quality or integrity of ACE or any of the other Released Parties' business, education, or employment practices, or any other disparaging or derogatory remarks about ACE or any of the other Released Parties, their owners, officers, directors, managerial personnel, or other employees.

### Cooperation

You will continue to perform your work as expected until Separation Date. You will also follow and honor the Code of Conduct as set forth in the Employee Handbook.

Williams
Page 4

As requested by ACE, you agree to assist with any training and/or transition of your responsibilities to a designated employee.

Except as set forth in the section entitled "Acknowledgement" or as permitted by law, you will not initiate any proceeding, investigation, or inquiry, or any other action of any kind with any governmental agency, with respect to ACE or any of the other Released Parties' services, facilities, educational practices, employment practices, or business operations, relating to your employment or the termination of your employment as provided for in this Agreement.

## Employment References

Further in consideration of your undertakings set forth in this Agreement, ACE agrees that it will provide you with a letter of reference. Additionally, upon receipt of inquiries concerning your work history with ACE, it will disclose only your dates of employment with ACE, your job title while employed with ACE, and your final salary while employed with ACE, and only in response to inquiries from your prospective employers, as verification of information provided by you to such prospective employers. In consideration for this agreement, you agree to advise all prospective employers that any requests for information concerning your employment with ACE should be directed to Human Resources who will maintain possession of your personnel records.

## Voluntary Resignation Agreement

Further in consideration of the Special Separation Benefits described in this Agreement, you acknowledge and agree that, as of the date of your execution of this Agreement, you are voluntarily resigning your employment and have declined ACE's offer to relocate to Indianapolis under ACE's voluntarily relocation package.

## Confidentiality

You agree that the terms of this Agreement are, and will remain, confidential. You further agree that you will not disclose the terms of this Agreement to anyone except your spouse (if any), attorney, and accountant or tax return preparer, if such persons have agreed to keep such information confidential, and except as may be required by law or judicial process.

In further consideration of the Special Separation Benefits offered to you by ACE, you represent and warrant that you have not disclosed to any person, other than any of the Released Parties, any documents or information to which you have had access during your employment, including but not limited to (i) all information pertaining to any specific business transactions in which ACE or any of the other Released Parties were, are, or may be involved; (ii) all financial and budgetary information relating to ACE or any of the other Released Parties; and (iii) in general, the business, financial affairs, technology, business development and marketing plans, and operations of ACE or any of the other Released Parties. You further acknowledge and agree that such documents and information are considered confidential and are not to be disseminated or disclosed by you to any other parties, except as may be required by law or judicial process. In the event it appears that you will be compelled by law or judicial process to disclose such confidential information, you will notify Human Resources, immediately upon your receipt of a subpoena or other legal process. You further understand that, notwithstanding the specific categories of confidential information listed above; this confidentiality provision does not apply to the dissemination or disclosure of information already generally known to the public.

Williams
Page 5

## Return of Property

You acknowledge and agree that you must return to ACE any and all items of ACE or any of the other Released Parties' property, including without limitation keys, access cards or devices, computers, software, calculators, equipment, credit cards, telephones, books or other publications, forms, files, manuals, correspondence, business records, lists of fees, personnel data, lists of employees, salary and benefits information (other than relating to you), customer and prospect records, notes, lists of suppliers and vendors, lists of customers and prospects, list of faculty members, contracts, contract information, brochures, financial data, catalogs, training materials, marketing plans, computer tapes and diskettes or other portable media, computer-readable files and data stored on any form of storage media whether portable or installed, and data processing reports, and any and all other documents (including both originals and all copies of any documents) or property which you have had possession of or control over during the course of your employment with ACE, regardless of the manner in which you acquired possession of the documents or property, and which you have not already returned to ACE. By your signature, you represent that you have complied with these requirements, and that you no longer retain in your possession any such documents or other property or you have destroyed such. You further agree that should you discover any such property still in your possession, you will immediately return such property to ACE, through Human Resources.

## Agreement Regarding Solicitation of Employees, Customers, Prospects, and Suppliers

In consideration of the Special Separation Benefits provided to you by ACE pursuant to this Agreement and other consideration provided to you by ACE during your employment and pursuant to this Agreement, you acknowledge and agree that for a period of one (1) year following the Separation Date, you will not, directly or indirectly, for your own account or for the benefit of any other person or party:

(a)     Solicit, induce, entice, or attempt to entice any employee, contractor, or subcontractor of ACE or any of the other Released Parties to terminate his or her employment or contract with ACE or any of the other Released Parties; or

(b)     Solicit, induce, entice, or attempt to entice any customer, prospect, or supplier of ACE or any of the other Released Parties, including any firms that have been customers, prospects, or suppliers of ACE or any of the other Released Parties within one (1) year preceding the Separation Date, to terminate its business relationship with ACE or any of the other Released Parties, or to refrain from entering into a business relationship with ACE or any of the other Released Parties by, including but not limited to, making disparaging remarks about ACE

Williams
Page 6

> or any of the other Released Parties, or making service, property, or other comparisons specifically unfavorable to ACE or any of the other Released Parties that are based upon any information you obtained during your employment with ACE.

You expressly acknowledge that the Special Separation Benefits provided to you by ACE pursuant to this Agreement, and other consideration provided to you by ACE during your employment and pursuant to this Agreement, are sufficient to justify the restrictions imposed upon you in the paragraph entitled "Confidentiality" and in this paragraph of this Agreement. You waive any argument to the contrary, and agree not to challenge the enforceability of the paragraph entitled "Confidentiality" and this paragraph of this Agreement.

You further acknowledge and agree that should you breach this obligation in the paragraph entitled "Confidentiality" or the obligations in this paragraph, ACE or any of the other Released Parties will be entitled to enforce the provisions of this paragraph by seeking injunctive relief in addition to recovering any monetary damages ACE or any of the other Released Parties may sustain as a result of such breach, including but not limited to their attorney's fees and costs of court incurred to enforce the provisions of the paragraph entitled "Confidentiality" and the provisions in this paragraph, and that, in all other respects, this Agreement will remain in full force and effect.

### Breach of Agreement

You understand that should you fail to comply with any of your obligations as set forth in this Agreement, ACE will have no obligation to make payment of the Special Separation Benefits described above. Furthermore, if, notwithstanding your release of claims as described above, you (or any party asserting any claim derivative of your own) should nonetheless proceed to make any such claims against ACE or any of the other Released Parties by bringing an action in a federal, state, or municipal court, or before any administrative body that has the power to make a monetary or equitable award, then in addition to any other legal or equitable remedies available to ACE for your breach of this Agreement, ACE may seek, and the court or other body hearing the claims may hold you liable for, ACE's damages and costs, including attorney's fees, incurred in defending against your claims.

You further acknowledge and agree that in the event that a court of competent jurisdiction determines that you have breached any aspect of this Agreement other than the General Release, then in addition to any other legal or equitable remedies available to ACE or the other Released Parties for such breach, ACE or the other Released Parties may seek, and the

Williams
Page 7

court or other body hearing the claims may hold you liable for, ACE or the other Released Parties' damages and costs, including attorney's fees and court costs, incurred in pursuing its claims for such breach of this Agreement.

Both ACE and you agree that any controversy or claim arising out of or relating to this Agreement will first be submitted to non-binding mediation prior to the commencement of other legal proceedings, with mediation expenses to be borne equally by the parties. Only in the event the parties are unable to resolve their differences through mediation may either party initiate other legal proceedings to enforce this Agreement.

## Purpose and Effect of this Agreement

You acknowledge that ACE is giving you the Special Separation Benefits described in this Agreement to resolve any disputes that may exist, and to provide you with a termination allowance after the end of your employment. Of course, neither you nor ACE mean for this Agreement to be understood as any admission of liability or wrongdoing, which we both deny.

## Acknowledgement

By signing and returning this Agreement, you acknowledge and agree that ACE has advised you to consult with an attorney prior to executing this Agreement; that you have had sufficient time to consider this Agreement; that, for a period of seven (7) days following the execution of this Agreement, you may revoke the release of any claims you may have under the ADEA, and that this Agreement will not become effective or enforceable until the revocation period has expired; that you have carefully read this entire Agreement and find that it has been written in language that you understand; that you fully understand the meaning and effect of your action in executing this Agreement; and that your execution of this Agreement is knowing and voluntary.

Although this letter cannot prevent you from filing a charge of discrimination or retaliation with the Equal Employment Opportunity Commission with regard to your employment with ACE, knowing that the Special Separation Benefits you are receiving pursuant to this Agreement is mutually intended by both ACE and you to provide the full and only compensation to you for all claims, damages, or other demands that you might have or make against ACE or any of the other Released Parties with respect to your employment or the termination of your employment, you agree to forever waive any right to monetary recovery should any administrative agency or other individual or group of individuals pursue any claim on your behalf. You further agree that you will not request or accept anything of value from ACE or the other Released Parties not provided for in this Agreement as compensation or damages related to your employment or the termination of your employment with ACE. Therefore, should you file a charge of discrimination or retaliation or pursue any other similar action with

Williams
Page 8

regard to your employment with ACE, you acknowledge and agree that this Agreement will bar you from receiving any compensation or personal relief in the event of such a charge or action.

## Entire Agreement

This Agreement serves as the entire agreement between you and ACE regarding your employment. You further acknowledge that neither ACE nor any of the other Released Parties has made any promise or representation to you that is not expressed in this Agreement, and that in entering this Agreement, you are not relying on any statement, promise or representation by ACE or any of the other Released Parties, other than those contained in this Agreement, but are instead relying solely on your own judgment in consultation with your attorneys, if you have one. This Agreement may not be modified except in writing signed by both you and an authorized executive officer of ACE.

## Jury Trial Waiver

In the event that any dispute arising from or related to this Agreement results in a lawsuit, you expressly waive any right you may otherwise have for a jury to decide the issues in the lawsuit, regardless of the party or parties asserting claims in the lawsuit or the nature of such claims. You irrevocably agree that all issues in such a lawsuit will be decided by a judge rather than a jury. This provision is a material inducement to ACE to enter into this Agreement.

## Waiver

You further acknowledge and agree that the failure of ACE or any of the other Released Parties at any time to enforce any provisions of this Agreement will not be construed to be a waiver of such provisions or any other provisions of this Agreement, or of ACE or any of the other Released Parties' right thereafter to enforce any such provision.

## Binding Agreement; Assignment of Agreement

This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, successors and permitted assigns. ACE may assign this Agreement without notice in its sole discretion.

## Governing Law and Venue

You expressly acknowledge and agree that this Agreement and the rights and duties of the parties under it will be governed by and construed in accordance with the laws of the State of Indiana. Any dispute regarding the subject matter, terms, or performance of this Agreement may be brought only in a state or federal court of competent jurisdiction in Marion County, Indiana. ACE and you expressly agree that proper jurisdiction and venue for any such disputes must be in Marion County, Indiana only.

Williams
Page 9

_____

If you agree with the above provisions, please sign both copies of this letter in the space provided below. You should return one signed original to Human Resources and maintain the other signed original in your files.

Sincerely,

**AMERICAN COLLEGE OF EDUCATION, INC.**

By: _____

Name:  Howard Rouse
Title:  CFO


**ACCEPTED AND AGREED TO:**

_____

Triano A. Williams

Date Signed: _____



February 18, 2016


Triano A. Williams
14115 S. Wabash Ave
Riverdale, IL 60827

Dear Triano,

As you know, the IT department is required to work directly out of the Indianapolis office effective April 1, 2016. The position that you hold will be relocated to that office. You have been valued member of the team since 09/10/2007, and because of your service to ACE we are offering you the opportunity to relocate at your current salary. You will also be given $10,000 to be spent towards relocation expenses.

Should you choose not to relocate, then you will be compensated for active employment through April 1, 2016, and you will be entitled to a separation package. We are confident that you will continue to support ACE during this very important transition.

Please let us know if you choose to accept or decline this offer by indicating below and signing this document. Your response is needed by the close of business on February 24, 2016 to KK Byland at kk.byland@ace.edu.



Sincerely,



KK Byland, PHR
Human Resources Manager


_____I accept the offer to relocate to Indianapolis, Indiana

_____I decline the offer to relocate to Indianapolis, Indiana

Employee Signature: _____ Date: _____



**AMERICAN COLLEGE**
*of*
**EDUCATION®**

February 23, 2016

***BY EMAIL DELIVERY***

Triano A. Williams
14115 S. Wabash Ave
Riverdale, IL 60827

Dear Triano:

Due to your decision not to relocate to Indianapolis, your employment with American College of Education, Inc. ("ACE") will conclude effective as of the close of business, April 1, 2016 (the "Separation Date"). This letter confirms ACE's offer and, by your signature below, your acceptance of this proposed Separation Agreement (the "Agreement"). On behalf of ACE, I want to thank you for your prior service and wish you success in your future endeavors.

<strong>Pay and Benefits You Will Receive Regardless<br>of Whether You Sign and Return This Agreement</strong>

Regardless of whether you elect to receive the Special Separation Benefits described below by signing this Agreement, you have received or will receive the following pay and benefits:

- Payment of your regular base salary through the Separation Date;

- Payment of accrued and unused paid time off; and

- As of May 1, 2016 ACE shall provide health benefits to you via COBRA in accordance with the ACE medical plans and applicable law. The COBRA information and election notice shall be delivered to you in accordance with applicable law.

The amounts paid under this section are gross amounts, subject to lawful deductions, including any deductions you have previously authorized.

<strong>Special Separation Benefits<br>If You Sign and Return This Agreement</strong>

If you sign and return this Agreement, you will receive wages in lieu of notice in the gross amount of **$14,843.28** which is the equivalent to twelve (12) weeks of your regular salary. This amount is a gross amount, subject to lawful deductions, and will be paid to you in one lump sum payment on the immediate payday following the Separation Date. The separation compensation and outplacement services are collectively referred to herein as the "Special Separation Benefits."

Williams
Page 2

The Special Separation Benefits specified in this Agreement will be provided to you on the express condition that you have executed this Agreement and delivered a copy of this Agreement to ACE in accordance with the terms of this Agreement, that you have fulfilled all your obligations under this Agreement, that you have not violated any of the requirements or prohibitions set forth in this Agreement, and that you have met all other specific conditions for the receipt of any particular payment set forth in any paragraphs in this Agreement.

By executing this Agreement, you acknowledge and agree that ACE has no legal obligation to provide the Special Separation Benefits to you and that the Special Separation Benefits is in addition to anything of value to which you are already entitled. You also acknowledge and agree that your acceptance of the Special Separation Benefits and attendant obligations as described in this Agreement is in consideration of ACE promises and undertakings set forth in this Agreement. You also acknowledge and agree that ACE obligations owed to you pursuant to your employment with ACE, and your participation in its benefit plans, if any, and that no additional sums are owed to you by ACE or any of the other Released Parties for any reason.

### What You Must Do to Receive
### the Special Separation Benefits

ACE's offer of the Special Separation Benefits will expire at **5:00 p.m. on March 1, 2016**. You may accept this offer at any time before expiration by signing this letter in the space provided below, and returning it to Human Resources.  Please read the General Release below carefully and seek the advice of legal counsel, if you desire, before making your decision.

Williams
Page 3

## General Release

You understand that various state and federal laws and regulations prohibit employment discrimination based on age, race, sex, color, national origin, religion, disability, citizenship, and membership or application for membership in a uniformed service, and that the law also prohibits breach of contract (express or implied) and intentional or negligent tortious conduct.

**In consideration of the Special Separation Benefits described above, you hereby release and discharge (i) ACE; (ii) any of ACE's affiliated entities; (iii) Randy Best, or any other past or present owner, officer, director, or other employee of the entities just named in their individual and official capacities; or (iv) any fiduciary, agent, representative, insurer, attorney, or any successors and assigns of the entities and individuals just named (collectively the "Released Parties") from, and waive to the maximum extent permitted by law, any and all claims, liabilities, demands, and causes of action, known or unknown, fixed or contingent, which you may have or claim against them. This General Release includes but is not limited to any and all claims arising under federal, state, or local laws prohibiting employment discrimination, including but not limited to; the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964, as amended; the Family and Medical Leave Act of 1993; the Employee Retirement Income Security Act; claims for retaliation under the Fair Labor Standards Act of 1938; the Equal Pay Act; the Consolidated Omnibus Budget Reconciliation Act of 1986; the Pregnancy Discrimination Act; the Lilly Ledbetter Fair Pay Act; the Fair Credit Reporting Act; the Employee Polygraph Protection Act; Chapter 21 of the Texas Labor Code; Chapter 451 of the Texas Labor Code; the Texas Payday Act; any other provision of the Texas Labor Code; The Illinois Human Rights Act, as amended, the Illinois wage payment statute and any other Illinois wage law, all as amended; any other federal, state or local law or regulation; and any and all other claims growing out of any legal restrictions, contractual or otherwise, on ACE's right to terminate the employment of its employees; and any and all claims arising out of your employment with ACE or as a result of the conclusion of your employment. This General Release does not waive any rights or claims that may arise after the date this Agreement is executed. You further acknowledge and agree that by accepting the Special Separation Benefits offered to you, you have given up your right to file any complaint, lawsuit, or other legal action to assert any such claim, subject to the exception noted in the section entitled "Acknowledgment" set forth below.**

## Nondisparagement

You will not make to any other persons or entities any statement, oral or written, which directly or indirectly impugns the quality or integrity of ACE or any of the other Released Parties' business, education, or employment practices, or any other disparaging or derogatory remarks about ACE or any of the other Released Parties, their owners, officers, directors, managerial personnel, or other employees.

## Cooperation

You will continue to perform your work as expected until Separation Date. You will also follow and honor the Code of Conduct as set forth in the Employee Handbook.

Williams
Page 4

As requested by ACE, you agree to assist with any training and/or transition of your responsibilities to a designated employee.

Except as set forth in the section entitled "Acknowledgement" or as permitted by law, you will not initiate any proceeding, investigation, or inquiry, or any other action of any kind with any governmental agency, with respect to ACE or any of the other Released Parties' services, facilities, educational practices, employment practices, or business operations, relating to your employment or the termination of your employment as provided for in this Agreement.

## Employment References

Further in consideration of your undertakings set forth in this Agreement, ACE agrees that it will provide you with a letter of reference. Additionally, upon receipt of inquiries concerning your work history with ACE, it will disclose only your dates of employment with ACE, your job title while employed with ACE, and your final salary while employed with ACE, and only in response to inquiries from your prospective employers, as verification of information provided by you to such prospective employers. In consideration for this agreement, you agree to advise all prospective employers that any requests for information concerning your employment with ACE should be directed to Human Resources who will maintain possession of your personnel records.

## Voluntary Resignation Agreement

Further in consideration of the Special Separation Benefits described in this Agreement, you acknowledge and agree that, as of the date of your execution of this Agreement, you are voluntarily resigning your employment and have declined ACE's offer to relocate to Indianapolis under ACE's voluntarily relocation package.

## Confidentiality

You agree that the terms of this Agreement are, and will remain, confidential. You further agree that you will not disclose the terms of this Agreement to anyone except your spouse (if any), attorney, and accountant or tax return preparer, if such persons have agreed to keep such information confidential, and except as may be required by law or judicial process.

In further consideration of the Special Separation Benefits offered to you by ACE, you represent and warrant that you have not disclosed to any person, other than any of the Released Parties, any documents or information to which you have had access during your employment, including but not limited to (i) all information pertaining to any specific business transactions in which ACE or any of the other Released Parties were, are, or may be involved; (ii) all financial and budgetary information relating to ACE or any of the other Released Parties; and (iii) in general, the business, financial affairs, technology, business development and marketing plans, and operations of ACE or any of the other Released Parties. You further acknowledge and agree that such documents and information are considered confidential and are not to be disseminated or disclosed by you to any other parties, except as may be required by law or judicial process. In the event it appears that you will be compelled by law or judicial process to disclose such confidential information, you will notify Human Resources, immediately upon your receipt of a subpoena or other legal process. You further understand that, notwithstanding the specific categories of confidential information listed above; this confidentiality provision does not apply to the dissemination or disclosure of information already generally known to the public.

Williams
Page 5

## Return of Property

You acknowledge and agree that you must return to ACE any and all items of ACE or any of the other Released Parties' property, including without limitation keys, access cards or devices, computers, software, calculators, equipment, credit cards, telephones, books or other publications, forms, files, manuals, correspondence, business records, lists of fees, personnel data, lists of employees, salary and benefits information (other than relating to you), customer and prospect records, notes, lists of suppliers and vendors, lists of customers and prospects, list of faculty members, contracts, contract information, brochures, financial data, catalogs, training materials, marketing plans, computer tapes and diskettes or other portable media, computer-readable files and data stored on any form of storage media whether portable or installed, and data processing reports, and any and all other documents (including both originals and all copies of any documents) or property which you have had possession of or control over during the course of your employment with ACE, regardless of the manner in which you acquired possession of the documents or property, and which you have not already returned to ACE. By your signature, you represent that you have complied with these requirements, and that you no longer retain in your possession any such documents or other property or you have destroyed such. You further agree that should you discover any such property still in your possession, you will immediately return such property to ACE, through Human Resources.

## Agreement Regarding Solicitation of Employees, Customers, Prospects, and Suppliers

In consideration of the Special Separation Benefits provided to you by ACE pursuant to this Agreement and other consideration provided to you by ACE during your employment and pursuant to this Agreement, you acknowledge and agree that for a period of one (1) year following the Separation Date, you will not, directly or indirectly, for your own account or for the benefit of any other person or party:

(a)    Solicit, induce, entice, or attempt to entice any employee, contractor, or subcontractor of ACE or any of the other Released Parties to terminate his or her employment or contract with ACE or any of the other Released Parties; or

(b)    Solicit, induce, entice, or attempt to entice any customer, prospect, or supplier of ACE or any of the other Released Parties, including any firms that have been customers, prospects, or suppliers of ACE or any of the other Released Parties within one (1) year preceding the Separation Date, to terminate its business relationship with ACE or any of the other Released Parties, or to refrain from entering into a business relationship with ACE or any of the other Released Parties by, including but not limited to, making disparaging remarks about ACE

Williams
Page 6

or any of the other Released Parties, or making service, property, or other comparisons specifically unfavorable to ACE or any of the other Released Parties that are based upon any information you obtained during your employment with ACE.

You expressly acknowledge that the Special Separation Benefits provided to you by ACE pursuant to this Agreement, and other consideration provided to you by ACE during your employment and pursuant to this Agreement, are sufficient to justify the restrictions imposed upon you in the paragraph entitled "Confidentiality" and in this paragraph of this Agreement. You waive any argument to the contrary, and agree not to challenge the enforceability of the paragraph entitled "Confidentiality" and this paragraph of this Agreement.

You further acknowledge and agree that should you breach this obligation in the paragraph entitled "Confidentiality" or the obligations in this paragraph, ACE or any of the other Released Parties will be entitled to enforce the provisions of this paragraph by seeking injunctive relief in addition to recovering any monetary damages ACE or any of the other Released Parties may sustain as a result of such breach, including but not limited to their attorney's fees and costs of court incurred to enforce the provisions of the paragraph entitled "Confidentiality" and the provisions in this paragraph, and that, in all other respects, this Agreement will remain in full force and effect.

### Breach of Agreement

You understand that should you fail to comply with any of your obligations as set forth in this Agreement, ACE will have no obligation to make payment of the Special Separation Benefits described above. Furthermore, if, notwithstanding your release of claims as described above, you (or any party asserting any claim derivative of your own) should nonetheless proceed to make any such claims against ACE or any of the other Released Parties by bringing an action in a federal, state, or municipal court, or before any administrative body that has the power to make a monetary or equitable award, then in addition to any other legal or equitable remedies available to ACE for your breach of this Agreement, ACE may seek, and the court or other body hearing the claims may hold you liable for, ACE's damages and costs, including attorney's fees, incurred in defending against your claims.

You further acknowledge and agree that in the event that a court of competent jurisdiction determines that you have breached any aspect of this Agreement other than the General Release, then in addition to any other legal or equitable remedies available to ACE or the other Released Parties for such breach, ACE or the other Released Parties may seek, and the

Williams
Page 7

court or other body hearing the claims may hold you liable for, ACE or the other Released Parties' damages and costs, including attorney's fees and court costs, incurred in pursuing its claims for such breach of this Agreement.

Both ACE and you agree that any controversy or claim arising out of or relating to this Agreement will first be submitted to non-binding mediation prior to the commencement of other legal proceedings, with mediation expenses to be borne equally by the parties. Only in the event the parties are unable to resolve their differences through mediation may either party initiate other legal proceedings to enforce this Agreement.

<u>**Purpose and Effect of this Agreement**</u>

You acknowledge that ACE is giving you the Special Separation Benefits described in this Agreement to resolve any disputes that may exist, and to provide you with a termination allowance after the end of your employment. Of course, neither you nor ACE mean for this Agreement to be understood as any admission of liability or wrongdoing, which we both deny.

<u>**Acknowledgement**</u>

By signing and returning this Agreement, you acknowledge and agree that ACE has advised you to consult with an attorney prior to executing this Agreement; that you have had sufficient time to consider this Agreement; that, for a period of seven (7) days following the execution of this Agreement, you may revoke the release of any claims you may have under the ADEA, and that this Agreement will not become effective or enforceable until the revocation period has expired; that you have carefully read this entire Agreement and find that it has been written in language that you understand; that you fully understand the meaning and effect of your action in executing this Agreement; and that your execution of this Agreement is knowing and voluntary.

Although this letter cannot prevent you from filing a charge of discrimination or retaliation with the Equal Employment Opportunity Commission with regard to your employment with ACE, knowing that the Special Separation Benefits you are receiving pursuant to this Agreement is mutually intended by both ACE and you to provide the full and only compensation to you for all claims, damages, or other demands that you might have or make against ACE or any of the other Released Parties with respect to your employment or the termination of your employment, you agree to forever waive any right to monetary recovery should any administrative agency or other individual or group of individuals pursue any claim on your behalf. You further agree that you will not request or accept anything of value from ACE or the other Released Parties not provided for in this Agreement as compensation or damages related to your employment or the termination of your employment with ACE. Therefore, should you file a charge of discrimination or retaliation or pursue any other similar action with

Williams
Page 8

regard to your employment with ACE, you acknowledge and agree that this Agreement will bar
you from receiving any compensation or personal relief in the event of such a charge or action.

## Entire Agreement

This Agreement serves as the entire agreement between you and ACE regarding your
employment. You further acknowledge that neither ACE nor any of the other Released Parties
has made any promise or representation to you that is not expressed in this Agreement, and that
in entering this Agreement, you are not relying on any statement, promise or representation by
ACE or any of the other Released Parties, other than those contained in this Agreement, but are
instead relying solely on your own judgment in consultation with your attorneys, if you have
one. This Agreement may not be modified except in writing signed by both you and an authorized
executive officer of ACE.

## Jury Trial Waiver

In the event that any dispute arising from or related to this Agreement results in a lawsuit,
you expressly waive any right you may otherwise have for a jury to decide the issues in the lawsuit,
regardless of the party or parties asserting claims in the lawsuit or the nature of such claims.
You irrevocably agree that all issues in such a lawsuit will be decided by a judge rather than a jury.
This provision is a material inducement to ACE to enter into this Agreement.

## Waiver

You further acknowledge and agree that the failure of ACE or any of the other Released
Parties at any time to enforce any provisions of this Agreement will not be construed to be a
waiver of such provisions or any other provisions of this Agreement, or of ACE or any of the
other Released Parties' right thereafter to enforce any such provision.

## Binding Agreement; Assignment of Agreement

This Agreement shall be binding upon and inure to the benefit of the parties and their
respective heirs, successors and permitted assigns. ACE may assign this Agreement without notice
in its sole discretion.

## Governing Law and Venue

You expressly acknowledge and agree that this Agreement and the rights and duties of
the parties under it will be governed by and construed in accordance with the laws of the State of
Indiana. Any dispute regarding the subject matter, terms, or performance of this Agreement may
be brought only in a state or federal court of competent jurisdiction in Marion County,
Indiana. ACE and you expressly agree that proper jurisdiction and venue for any such disputes
must be in Marion County, Indiana only.

Williams
Page 9

_____

If you agree with the above provisions, please sign both copies of this letter in the space provided below. You should return one signed original to Human Resources and maintain the other signed original in your files.

Sincerely,

**AMERICAN COLLEGE OF EDUCATION, INC.**

By: _____
Name: Howard Rouse
Title: CFO


**ACCEPTED AND AGREED TO:**


_____
Triano A. Williams

Date Signed: _____

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 470-2016-01138 |

| **Indiana Civil Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Triano Williams** | **(773) 415-3521** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **14115 S. Wabash Avenue, Riverdale, IL 60827** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **AMERICAN COLLEGE OF EDUCATION** | **101 - 200** | **(800) 280-0307** |

| Street Address | City, State and ZIP Code |
|---|---|
| **101 W Ohio St #1200, Indianapolis, IN 46204** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest          Latest |
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | 02-11-2016      02-11-2016 |
| ☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the American College of Education in September of 2007 for a position in the IT Department. My most current position was that of a System Administrator. On February 11, 2016 a secret meeting was held. The meeting was about putting an interim manager in place after the department manager announced he was leaving. The only two not invited to the meeting was myself and another African American Administrator. In the past whenever my department manager was out sick or training, I was always selected as interim. Also, I was recognized as employee of the month 4 times in 2015. After questioning as to whether or not there was an appointment I and another African American were required to track all of my duties and time in fifteen minute increments. No other employees were given such requirements. I believe I am being discriminated against based on my race which is a violation of Title VII of the Civil Rights Act of 1964 as amended. *I Also believe I have suffered discrimination based on my race because I was paid less than my co-workers who are Not African Americans and who performed the same job duties or who had less responsibilities than I, in violation of the Equal Pay Act.*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| ~~22~~<br>**Mar 01, 2016**            *Triano H Williams*<br>Date                        *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

STATE OF INDIANA )
) SS:
COUNTY OF MARION )

IN THE MARION SUPERIOR COURT

CAUSE NO. ___49D01 16 07 PL 025367___

AMERICAN COLLEGE OF
EDUCATION, INC.,

     Plaintiff,

     v.

TRIANO WILLIAMS,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)

**FILED**

(182) JUL 1 9 2016

*Myla A. Eldridge*
CLERK OF THE MARION CIRCUIT COURT

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

## I.    <u>INTRODUCTION</u>

Plaintiff, American College of Education, Inc. ("ACE" or "the College"), hereby files the following action against Defendant, Triano Williams, as follows:

### <u>Nature of Action</u>

1. . ACE brings this action for preliminary and permanent injunctive relief and damages to stop Mr. William's unlawful conduct.

2. As the Systems Administrator for ACE, Mr. Williams had access to ACE's confidential information and trade secrets. Following his termination, Mr. Williams returned the company-issued computer which he had been using to perform his work duties. This computer had been completely wiped of all information, including information needed by ACE to conduct its business. Specifically, at the time of his employment with ACE ended, Mr. Williams was the sole administrator of ACE's email account (hosted by Google), which is used by its students to communicate with the College and conduct their coursework. Mr. Williams claims the login administrator username and password to access ACE's email account was "autosaved" on his work laptop, but because Mr. Williams wiped his hard drive before returning it to ACE, the administrator

login information was lost. The College has been unable to access its student email account. ACE has attempted to contact Google to access the account, but Google refuses to allow ACE access without the administrator username and password. Without access to its email system, ACE is unable to administer its email account, which is causing immeasurable harm to the College's reputation as its students are unable to access their email and coursework. ACE has also requested the login information multiple times from Mr. Williams, but he has refused to provide this information without ACE paying him $200,000. As a result, ACE's business and contractual relationships with its students is suffering and at least one student has already declined to begin an online course because of email issues. ACE therefore seeks immediate relief through this Court.

### Parties, Jurisdiction, and Venue

3.      ACE provides online graduate and professional development programs for educators. ACE is a corporation organized and existing under the laws of the State of Illinois, with its principle place of business located in Indianapolis, Indiana.

4.      Mr. Williams is a resident of Illinois, and currently resides in Riverdale, Illinois. Mr. Williams is a previous employee of ACE who worked remotely; however, Mr. Williams often performed work for ACE in Indianapolis, Indiana. Additionally, Mr. Williams has engaged in unlawful acts which he knew would cause harm to ACE's operations in Indianapolis, Indiana.

5.      This Court has jurisdiction pursuant to Indiana Trial Rule 4.4.

6.      Venue is appropriate in this Court pursuant to Indiana Trial Rule 75.

2

## II.     FACTUAL BACKGROUND

7.     ACE hired Mr. Williams in 2007 as a Desktop Support employee.  At the time he was hired, Mr. Williams worked out of ACE's Chicago, Illinois office.

8.     In 2011, ACE closed its Chicago, Illinois office.  ACE no longer has any offices located in Illinois.

9.     From 2011 until the time of his termination, Mr. Williams was permitted to work remotely from his home in Chicago, Illinois.  However, Mr. Williams was often required to travel to ACE's Indianapolis, Indiana office to perform work duties for ACE.

10.     In November 2012, Mr. Williams was promoted to the position of Systems Administrator in the Information Technology ("IT") Department.  In this role, Mr. Williams was responsible for the day-to-day operation support for ACE's IT systems.

11.     Mr. Williams' employment with ACE ended on April 1, 2016.

12.     At the time his employment ended, Mr. Williams was the sole administrator of ACE's student email account.  The email account's root is "educate.ace.edu" and it is hosted by Google on the cloud.

13.     Around 2,000 students are currently registered to use ACE's student email account, including 60 active students.

14.     Students use their ACE-issued email addresses to communicate with ACE representatives, fellow students, and faculty.  Students also use this account to access their coursework.

15.     ACE also uses the Google email account to store student files with confidential information.  This information is protected by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g.

16.     As the sole administrator, Mr. Williams was the only employee who had access to the password needed to login to ACE's email account at the time of his termination.

17.     On information and belief, Mr. Williams set up the administrator account for ACE's student email system under a personal email address, rather than the work email address provided to him by ACE, triano.williams@ace.edu.  Had Mr. Williams' administrator access been set up through his ace.edu email address, the College would have been able to have Google reset the administrator password for the account.

18.     By setting up the administrator account under a non-ACE work email address, Mr. Williams violated ACE's standard protocol with respect to administrator accounts.  ACE was unaware that Mr. Williams' administrator account was not linked to his work email address until after his employment ended.

19.     Shortly after Mr. Williams' employment ended, ACE requested that Mr. Williams return his work computer, which had been provided to Mr. Williams by ACE.

20.     Mr. Williams returned his work computer to ACE in May 2016.

21.     Before he returned his work computer, Mr. Williams completely wiped the computer and installed a new operating system.

22.     Mr. Williams' work computer was also physically damaged.  The damage sustained to the computer would not have allowed Mr. Williams to use the computer and ACE can no longer use this computer.

23.     In May 2016, ACE began to receive complaints from current students that they could no longer access their ACE student email accounts.  They also complained that they could not access files that had been saved on the Google server, such as class assignments.

4

24.    Since Mr. Williams left employment, ACE has received at least 30 calls from students relating to issues with their ACE student email accounts.

25.    Because the system on Mr. Williams' computer had been completely wiped and a new operating system was installed, ACE is not able access its student email account as it does not know the login password Mr. Williams' had created for the administrator account.

26.    Upon discovering that it could not access its Google-hosted email account, ACE contacted Google to try and access the email account. Because the administrator account had not been set up under Mr. Williams' work email address, Google refused to grant ACE access to the account. In fact, Google explicitly stated the Mr. Williams was the sole administrator and that ACE would have to get the administrator information from him in order to access the account.

27.    After exhausting its efforts to access its student email system through Google, ACE contacted Mr. Williams and asked him to provide the administrator information necessary to access the account.

28.    On May 23, 2016, Mr. Williams texted James Aldridge, ACE's VP of Technology, asking if Mr. Aldridge was able to get into the email account. Mr. Aldridge responded: "Unfortunately, no. I have not be able to get into Google yet. Do you have the username and password for the admin console?"

29.    Mr. Williams responded to Mr. Aldridge's text as follows: "My lawyer told me I had to have the communication come through her from you . . . or ace lawyer before I can try to help."

30.    On June 30, 2016, counsel for ACE sent a letter to Mr. Williams' counsel requesting the login information by July 5, 2016. A copy of this letter is attached as **Exhibit A.**

31.     On July 6, 2016, Mr. Williams' attorney responded to ACE's June 30, 2016, letter. A copy of the response letter is attached as **Exhibit B**.

32.     In the response letter, Mr. Williams' attorney represented that he was the sole remaining administrator when he was terminated. She further stated that the login ID and password used by Mr. Williams to access the Google email account were "autosaved" on his laptop computer, which he returned to ACE. *See* **Exhibit B**.

33.     Based on Mr. Williams' attorney's representation, if Mr. Williams had not wiped his work computer before returning it to ACE, ACE would have been able to access its student email account.

34.     Mr. Williams also refused to provide the login information to ACE. Instead, his attorney represented that she was "confident that Mr. Williams could assist the college in reinstating the Google email account" if ACE agreed to pay him $200,000 to settle the "dispute" over his employment ending. *See* **Exhibit B**.

35.     On July 12, 2016, Mr. Williams contacted KK Byland, Human Resources Director for the College, via email and reaffirmed that he would be "happy" to work with the College "to see if he could help" restore access to the account "upon settlement."

36.     Because ACE cannot access its student email account, its current students are unable to use their ACE-issued email accounts for communication and coursework purposes. They also cannot access any files they have saved on their Google accounts.

37.     ACE is aware of at least one student who declined to enroll for online classes in July 2016 because of email deliverability issues that ACE was unable to resolve due to lack of access to their Google administrator account.  Upon information and belief, ACE believes that other students have or will in the future decline to enroll in online classes due to issues accessing their email and coursework.

### III.    CAUSES OF ACTION

#### Intentional Interference With a Contractual Relationship

38.     ACE adopts and reincorporates paragraphs 1 through 37 as if set forth in full herein.

39.     ACE has agreed to provide email access to its students who choose to use an ACE-issued email address to conduct their coursework and communicate with staff, fellow students, and faculty.

40.     Mr. Williams has knowledge of the existence of the contract between ACE and its students.

41.     By refusing to provide the administrator login information to ACE for its student email account, Mr. Williams is intentionally interfering with ACE's contractual relationship with its students as these students can no longer access their ACE-issued email accounts.

42.     There is no justification for Mr. Williams' refusal to provide the login information for ACE's student email account, as he was assigned the sole administrator of the account as an employee of ACE.  ACE owns the Google email account and the administrator console.

43.     ACE has suffered, and continues to suffer, irreparable harm as a result of Mr. Williams' unlawful actions.

## Intentional Interference With Business Relationships

44. ACE adopts and reincorporates paragraphs 1 through 43 as if set forth in full herein.

45. ACE has agreed to provide email access to its students who choose to use an ACE-issued email address to conduct their coursework and communicate with staff, fellow students, and faculty.

46. Mr. Williams has knowledge of the existence of ACE's business relationships with its students.

47. By refusing to provide the administrator login information to ACE for its student email account, Mr. Williams is intentionally interfering with ACE's business relationships with its students as these students can no longer access their ACE-issued email accounts.

48. There is no justification for Mr. Williams to refuse to provide the login information for ACE's student email account, as he was assigned the sole administrator of the account as an employee of ACE. ACE owns the Google email account and the administrator console.

49. ACE has suffered, and continues to suffer, irreparable harm as a result of Mr. Williams' unlawful actions.

## Violation of the Indiana Uniform Trade Secret Act

50. ACE adopts and reincorporates paragraphs 1 through 49 as if set forth in full herein.

51. Mr. Williams had access to all of ACE's intellectual property, including trade secret information.

52. The administrator login and password for ACE's Google-hosted student email account is a trade secret because it derives independent economic value from being in a form that is not readily ascertainable by proper means by other persons who could obtain economic value from the information's disclosure or use.

8

53.     The login information constitutes protected content under the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1, *et seq.*

54.     ACE took reasonable steps to protect this confidential information, including but not limited to restricting access to its members and other employees.

55.     Mr. Williams misappropriated this trade secret by wiping this information from his company-issued computer and refusing to provide this information to ACE, who owns the Google account. Mr. Williams has purportedly retained this information in order to force ACE to pay him money. In other words, Mr. Williams misappropriated this trade secret in order to gain an economic advantage.

56.     Mr. Williams violated, and is continuing to violate, the Indiana Uniform Trade Secrets Act, I.C. § 24-2-3-1 *et seq.*

57.     ACE has suffered, and continues to suffer, irreparable harm as a result of Defendants' misappropriation of ACE's trade secrets.

<u>Conversion</u>

58.     ACE adopts and reincorporates paragraphs 1 through 57 as if set forth in full herein.

59.     By wiping all the information and data on his company-issued computer, including but not limited to the username and password for ACE's student email account, Mr. Williams knowingly and intentionally exerted unauthorized control over property belonging to ACE.

60.     Mr. Williams' conduct constituted conversion pursuant to Indiana Code § 35-43-4-3 and ACE has suffered pecuniary loss as a result of such conduct.

61.     Pursuant to Indiana Code § 34-24-3-1, ACE is entitled to recover three times its actual damages, the costs of this action, reasonable attorney's fees, the cost of paying employees to assist in pursuing this action, and all other reasonable costs of collection.

### Offense Against Intellectual Property

62.     ACE adopts and reincorporates paragraphs 1 through 61 as if set forth in full herein.

63.     Mr. Williams intentionally and without authorization destroyed data that constituted a trade secret or confidential information and that resided or existed on a computer system when he wiped all the information on his company-issued computer.

64.     Mr. Williams' conduct constituted an offense against intellectual property pursuant to Indiana Code § 35-43-1-7 and ACE has suffered pecuniary loss as a result of such conduct.

65.     Pursuant to Indiana Code § 34-24-3-1, ACE is entitled to recover three times its actual damages, the costs of this action, reasonable attorney's fees, the cost of paying employees to assist in pursuing this action, and all other reasonable costs of collection.

### Breach of Fiduciary Duty

66.     ACE adopts and reincorporates paragraphs 1 through 65 as if set forth in full herein.

67.     As an employee of ACE, Mr. Williams had a fiduciary duty to act in the best interests of ACE and to not place himself in a position where his interests are potentially antagonistic to ACE's.

68.     Mr. Williams breached this fiduciary duty by destroying company property and data following his termination and by refusing to return key confidential information to the College which he acquired as an employee of ACE.

69.     ACE has been harmed because of Mr. Williams' breach of his fiduciary duty.

### Criminal Mischief

70.     ACE adopts and reincorporates paragraphs 1 through 69 as if set forth in full herein.

71.     Mr. Williams intentionally or recklessly damaged his company-issued computer before returning it to ACE following his termination.  This damage was committed without authorization by ACE.

72.     ACE is no longer able to use this computer because of the damage intentionally or recklessly caused by Mr. Williams.

73.     Mr. Williams' conduct constituted criminal mischief pursuant to Indiana Code § 35-43-1-7 and ACE has suffered pecuniary loss as a result of such conduct.

74.     Pursuant to Indiana Code § 34-24-3-1, ACE is entitled to recover three times its actual damages, the costs of this action, reasonable attorney's fees, the cost of paying employees to assist in pursuing this action, and all other reasonable costs of collection.

### Request for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

75.     ACE adopts and reincorporates paragraphs 1 through 74 as if set forth in full herein.

76.     As demonstrated above, Mr. Williams has stolen ACE's confidential administrator account login information – which constitutes a trade secret under Indiana law – and is actively refusing to return this information to ACE.

77.     Mr. Williams' theft and refusal to return this information to ACE has caused and will continue to cause damage to ACE.

78.     ACE is entitled to injunctive relief to protect it from substantial and irreparable harm for which there is no adequate remedy at law.

11

WHEREFORE, Plaintiff, American College of Education, Inc., respectfully requests relief in this action that the Court:

     A.    Enter a Temporary Restraining Order immediately requiring Mr. Williams to provide ACE with the username and password of the administrator account for its Google-hosted student email account. Alternatively, if Mr. Williams claims that he is no longer in possession of the login information, enter a Temporary Restraining Order requiring Mr. Williams to contact Google to have the administrator account turned over to an ACE employee.

     B.    Enter a Temporary Restraining Order requiring Mr. Williams to refrain from accessing ACE's Google-hosted email account, which contains confidential student information.

     C.    Enter a Preliminary and Permanent Injunction requiring Mr. Williams to continue complying with the terms of the temporary restraining order.

     D.    An amount which will fully compensate Plaintiff for all actual damages sustained as a result of Defendants' unlawful conduct;

     E.    Treble damages under the Indiana Uniform Trade Secret Act and Indiana Code § 34-24-3-1;

     F.    Attorney fees and other costs incurred in this action;

     G.    All other relief that this Court deems just and proper.

## VERIFICATION

I, Dan Holestine, Chief Operating Officer of American College of Education, Inc., do hereby affirm, under the penalties of perjury, that the facts alleged in the foregoing Verified Complaint for Injunction and Other Relief are true to the best of my knowledge, information and belief.

7-13-16
_____
DATE

_____
Dan Holestine
Chief Operating Officer, American College of Education, Inc.

Respectfully submitted,

_____

Scott James Preston (25436-49)
Melissa K. Taft (29253-53)
Jackson Lewis P.C.
10 West Market Street, Suite 2400
Indianapolis, Indiana 46204
Telephone: (317) 489-6930
Facsimile: (317) 489-6931

*Attorneys for Plaintiff,*
*American College of Education, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Verified Complaint for Injunctive Relief and Damages* was served via Certified U.S. Mail, on July 19, 2016 on the following:

Triano Williams
14115 South Wabash Avenue
Riverdale, Illinois 60827-2237

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680

_____

Scott James Preston

4813-7095-1732, v. 1

14

# EXHIBIT A



Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis P.C.
10 West Market Street
Suite 2400
Indianapolis, Indiana 46204
Tel 317 489-6930
Fax 317 489-6931
www.jacksonlewis.com

ALBANY, NY
ALBUQUERQUE, NM
ATLANTA, GA
AUSTIN, TX
BALTIMORE, MD
BIRMINGHAM, AL
BOSTON, MA
CHICAGO, IL
CINCINNATI, OH
CLEVELAND, OH
DALLAS, TX
DENVER, CO
DETROIT, MI

GRAND RAPIDS, MI
GREENVILLE, SC
HARTFORD, CT
HOUSTON, TX
INDIANAPOLIS, IN
JACKSONVILLE, FL
LAS VEGAS, NV
LONG ISLAND, NY
LOS ANGELES, CA
MEMPHIS, TN
MIAMI, FL
MILWAUKEE, WI
MINNEAPOLIS, MN

MORRISTOWN, NJ
NEW ORLEANS, LA
NEW YORK, NY
NORFOLK, VA
OMAHA, NE
ORANGE COUNTY, CA
ORLANDO, FL
PHILADELPHIA, PA
PHOENIX, AZ
PITTSBURGH, PA
PORTLAND, OR
PORTSMOUTH, NH
PROVIDENCE, RI

RALEIGH-DURHAM, NC
RAPID CITY, SD
RICHMOND, VA
SACRAMENTO, CA
SAINT LOUIS, MO
SAN DIEGO, CA
SAN FRANCISCO, CA
SAN JUAN, PR
SEATTLE, WA
STAMFORD, CT
TAMPA, FL
WASHINGTON, DC REGION
WHITE PLAINS, NY

MY DIRECT DIAL IS: 317-489-6942
MY EMAIL ADDRESS IS: SCOTT.PRESTON@JACKSONLEWIS.COM

June 30, 2016

**VIA FEDERAL EXPRESS**

Calvita J. Frederick
Calvita J. Frederick & Associates
Post Office Box 802976
Chicago, Illinois 60680

Re:   Triano Williams v. American College of Education

Dear Ms. Frederick:

When Triano Williams was employed by the American College of Education, he created a Google domain account for student use with the email root "educate.ace.edu." When Mr. Williams set up the domain, he listed himself as the administrator with an email address that did not belong to the College.

The College reached out to Mr. Williams in mid-May to request his administrator passcode to the Google account. He informed the College that, per your instruction, we were to contact you about gaining access to the account. Google will not release any account information to the College because Mr. Williams, and not the College, is the sole administrator on the account.

Google has recently suspended the domain account and the College's students are unable to access their email and other course work stored on the Google domain. The College has approximately 2000 students signed up to use the account.

The College needs Mr. Williams to provide either the login ID and password for the Google account or the email address he is using as the administrator and the password for that email address by Noon EDT on Tuesday, July 5, 2016. If Mr. Williams fails to provide this information by that time, we will have not choice but to pursue any and all available remedies against Mr. Williams. We believe the failure to provide this information will conservatively result in over $500,000 in damages to the College if Mr. Williams fails to provide the requested information.



Given that time is of the essence, please ask Mr. Williams to communicate directly to KK Byland at the College with the requested information. We look forward to your response.

Very truly yours,

JACKSON LEWIS P.C.

Scott James Preston

SJP/wjj

4849-0663-4292, v. 1

# EXHIBIT B

CALVITA J. FREDERICK & ASSOCIATES
Attorneys at Law
Post Office Box 802976
Chicago, Illinois 60680
(312) 421-5544 (773) 823-1677

## FOR SETTLEMENT PURPOSES ONLY

### VIA FEDERAL EXPRESS AND EMAIL

February 29, 2016

Scott James Preston
Jackson Lewis
Attorneys at Law
10 West Market Street
Suite 200
Indianapolis, IN. 46204
Scott.Preston@jacksonlewis.com

*Re: Triano Williams vs American College of Education*

Dear Mr. Preston:

We write in response to your letter dated June 30, 2016 wherein you make several allegations of improper behavior on the part of my client, Mr. Triano Williams while he was employed with the American College of Education, followed by a demand that Mr. Williams provided certain information needed to access your accounts related to some 2000 student emails and course work information. You further indicated that damages to the College will amount to approximately $500,000.00 if my client fails to comply with your demand, and you give Mr. Williams until July 5, 2016 to provide the requested information.

Mr. Williams has retained my office to represent him in matters related to his claims against the College for wrongful discharge based upon discrimination. Therefore, all communication related to Mr. Williams and the College must be handled through my office with no direct contact with my client.

Further, much of your accounting of the facts that created this unfortunate situation, as detailed in your June 30, 2016 letter, is incorrect. The reality is the College created this problem over the course of the last several years as a result of certain business decisions followed by the termination of certain key employees.

First, Mr. Williams did not set up the Google domain account, as you suggest, but rather the Google domain account was set up by another employee of the College and Mr.

Williams *was* given a College email account. Although Mr. Williams was one of the Administrators with access to this system, he was not the Super Administrator.

Second, as a result of the College's separation from its parent company, and the separation from College employment of all other Administrators connected to the Google student email and course work system, Mr. Williams was the sole remaining Administrator when the College decided to terminate him and lock him out of the College's Google email system.

Third, the login ID and password used by Mr. Williams to access the Google email account were AutoSaved on Mr. Williams' laptop computer. You may recall that in previous written communication, you demanded Mr. Williams return that laptop computer to you. This request has been complied with.

Fourth, apparently too many unsuccessful attempts to access the Google email Administrator account have resulted in Google suspending the account.

You now have a situation created by a series of bad decisions made by the College. As a result, you stand in no position to make any demands on my client. I therefore view your June 30, 2016 letter as a request for a Settlement Demand in exchange for my client assisting the College with its current and costly situation.

Mr. Williams began his employment with the College in 2007 when he was hired in the position of Desktop Support for Information Technology. In 2012, his position was changed to Integration Systems Support and in 2013 his title was changed once again to Systems Administrator. However, the change in title/positions and responsibilities did not include a commensurate increase in salary. Although Mr. Williams purportedly worked a 9-5, in reality he worked nearly 60 hours most weeks, including time spent on weekends and holidays.

Mr. Williams operated under a written contract agreement with the College that provided for his salary, bonus and his ability to work remotely from his home in Illinois.

As you may be aware, Mr. Williams has a Joint Parenting Agreement that requires him to co-parent his seven-year old daughter including transporting her to and from school several days a week and extensive visitation on the weekends.

On February 18, 2016, Mr. Williams was advised he must relocate to the Indianapolis to work directly out of the corporate office or be terminated by the College.

On the same day, Mr. Williams was given a letter which attempted to bully him into accepting a Separation Agreement that was woefully inadequate from a financial standpoint and further required my client to agree that his termination was a voluntary resignation. The Separation Agreement also required Mr. Williams to give up any rights he might have to file a complaint about his treatment while an employee of the College.

2

In addition, Mr. Williams would not be able to provide testimony as to the unfair treatment of any other College employee once he "voluntarily resigned".

Upon information and belief, this is not the first College employee that has been unfairly treated and forced out of employment with the College, based upon race, sex, religion or other unlawful criteria.

The Separation Agreement which included the relocation the College attempted to force Mr. Williams to take not only violated the agreement between Williams and the College as to his remote access to work, but also would cause him to violate a court ordered agreement as to his minor child.

Thereafter, the College restricted access to the computer systems necessary for Mr. Williams to perform his work. This move was also accompanied by telephonic messaging which advised Mr. Williams should no longer report to work effective February 29, 2016.

In view of your assessment that this Google email blunder by the College will incur damages in excess of $500,000, I will assume that you will wish to move expeditiously in resolving this situation that necessitates Mr. Williams assistance.

In order to amicably settle this dispute, Mr. Williams requires a clean letter of reference, and payment of $200,000.00. The check should be made payable to Triano Williams and Calvita J. Frederick & Associates, his Attorneys.

Once the Settlement Check is received by my office and funds are cleared I am confident that Mr. Williams can assist the College in reinstating the Google email account.

Sincerely,

Calvita J. Frederick

3

STATE OF INDIANA )     IN THE MARION SUPERIOR COURT
                    ) SS:
COUNTY OF MARION )     CAUSE NO. 49D01-1607-PL-025367

AMERICAN COLLEGE OF     )
EDUCATION, INC.,     )
                    )
      Plaintiff,     )
                    )
      v.     )
                    )
TRIANO WILLIAMS,     )
                    )
      Defendant.     )

**FILED**

(8) AUG 0 ___ ____

*Myla a. Eldridge*
CLERK OF THE MARION CIRCUIT COURT

## ORDER GRANTING PLAINTIFF'S MOTION FOR EMERGENCY ORDER TO SHOW CAUSE FOR FAILURE TO COMPLY WITH THE TEMPORARY RESTRAINING ORDER

On August 2, 2016, Plaintiff American College of Education filed a Motion for Emergency Order to Show Cause re Contempt for Failure to Comply with the Temporary Restraining Order. The Court having reviewed this Motion and hereby finds that the Court should sets a hearing on Plaintiff's Motion for Emergency Order to Show Cause on August 11, 2016 at 10:30 a.m. Mr. Williams is ordered to show cause at this hearing regarding why he failed to comply with the Court's July 29, 2016, Temporary Restraining Order.

Should Mr. Williams fail to appear or fail to show good cause as to why he did not comply with the Temporary Restraining Order the Court may impose a number of different sanctions which include imposing a fine, awarding attorney fees or incarcerating Mr. Williams for failing to appear.

Date: 8.3.16

*Heather a. Welch*

Hon. Heather Welch
Marion County Superior Court

Copies:

Scott James Preston
Jackson Lewis P.C.
10 West Market Street
Suite 2400
Indianapolis, IN 46240
scott.preston@jacksonlewis.com

Melissa K. Taft
Jackson Lewis P.C.
10 West Market Street
Suite 2400
Indianapolis, IN 46240
melissa.taft@jacksonlewis.com

Calvita Frederick
Post Office Box 802976
Chicago, IL. 60680
calvita.frederick@att.net

4852-9675-6021, v. 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2016-06055 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>**Mr. Triano A. Williams** | Home Phone *(Incl. Area Code)*<br>**(773) 415-3521** | Date of Birth<br>**02-11-1977** |
|---|---|---|

Street Address      City, State and ZIP Code
**14115 S. Wabash Avenue, Riverdale, IL 60827**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**AMERICAN COLLEGE OF EDUCATION** | No. Employees, Members<br>**15 - 100** | Phone No. *(Include Area Code)*<br>**(317) 829-9400** |
|---|---|---|

Street Address      City, State and ZIP Code
**101 West Ohio Street, Suite 1200, Indianapolis, IN 46204**

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

Street Address      City, State and ZIP Code

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest      Latest<br>**03-04-2016** |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I began my employment with Respondent in the state of Illinois on or about September 7, 2007. My most recent position was IT Systems Administrator. During my employment, I was subjected to different terms and conditions of employment, including, but not limited to, harsher scrutiny. On or about February 25, 2016, I filed EEOC Charge 470-2016-01138. Subsequently, I was discharged.**

**I believe I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.**

RECEIVED EEOC

SEP 1 6 2016

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements*<br>CHICAGO DISTRICT OFFICE |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Sep 16, 2016**      *Triano A. Williams*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: **Triano A. Williams**<br>**c/o: Calvita Frederick**<br>**Attorneys at Law**<br>**P.O. Box 802976**<br>**Chicago, IL 60680** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2016-06055** | **Michael Solomon,**<br>**Investigator** | **(312) 869-8097** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Julianne Bowman,**
**District Director**

9-28-16
*(Date Mailed)*

Enclosures(s)

cc: **Chief Executive Officer**
**AMERICAN COLLEGE OF EDUCATION**
**101 West Ohio Street**
**Suite 1200**
**Indianapolis, IN 46204**