# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRIANO WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16-cv-11746 |
| ) | |
| AMERICAN COLLEGE OF EDUCATION, INC., ) | Hon. Amy J. St. Eve |
| SHAWNTEL LANDRY, HOWARD ROUSE, ) | |
| And KK BYLAND, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 30, 2016, Plaintiff Triano Williams brought the present Complaint against American College of Education ("ACE"), Shawntel Landry, Howard Rouse, and KK Byland, collectively "Defendants," alleging violations of Title VI and VII of the Civil Rights Act of 1964, retaliation, and violations of 42 U.S.C. § 1981. (R. 4, Compl.) Before the Court is Defendants' motion to dismiss for improper venue, or in the alternative, to transfer venue. (R. 12, Mot. to Dismiss.) For the following reasons, the Court denies Defendants' motion.

## BACKGROUND

Plaintiff Triano Williams is an African-African male who resides in Riverdale, Illinois. (Compl. ¶ 1.) Defendant ACE is an Illinois corporation with its principal place of business in Indianapolis, Indiana. (*Id.* ¶ 2.) ACE provides online graduate and professional programs for educators and has 100 employees in total, 15 of whom work in Illinois. (*Id.*) The individually named Defendants are all ACE employees who supervised or managed Plaintiff. (*Id.* ¶ 3.)

Plaintiff began working at ACE in September 2007 when he was hired as a Desktop Support employee in the Information Technology ("IT") Department. (*Id.* ¶ 7.) Plaintiff alleges that throughout his term of employment at ACE he was a model professional, was proficient in his work, and was respected by his fellow employees. (*Id.* ¶ 8.) In 2012, Plaintiff moved to a position in Integration Systems Support and in 2013, he became a Systems Administrator, but Plaintiff alleges that he did not receive a commensurate increase in salary when he moved to these new positions. (*Id.* ¶ 9.) Although Plaintiff was scheduled to work normal 8 hour shifts, he alleges he often worked up to 60 hours a week and had to work on weekends and holidays. (*Id.* ¶ 10.) Recently, Plaintiff negotiated a written contract with ACE allowing him to work remotely from his home in Illinois so he could abide by a court ordered Joint Parenting Agreement requiring him to participate in parenting his 7-year-old daughter. (*Id.* ¶¶ 11-12.)

According to Plaintiff, ACE hired Rick Gahering, a Caucasian male who had less experience and education than Plaintiff, and paid Gahering more than Plaintiff despite similar job responsibilities. (*Id.* ¶ 13.) On or about February 11, 2016, ACE promoted Gahering, and he became Plaintiff's manager. (*Id.*) Plaintiff complained about Gahering's promotion and other discriminatory actions in a formal letter he sent to Defendants Landry and Byland dated February 11, 2016. (*Id.* ¶ 14; Ex. A, ACE Culture Letter.) Shortly after sending the letter, Plaintiff was required to track all of his work actions in 15-minute increments. (Compl. ¶ 15.) Plaintiff alleges that ACE only required that he and another African-American employee track their time in this way. (*Id.*)

On February 18, 2016, Defendant Byland, ACE's Human Resources Manager, sent Plaintiff a letter informing him that that he needed to relocate to ACE's Indianapolis corporate office or ACE would terminate him. (*Id.* ¶ 16; Ex. C, Byland Letter.) The same day, Defendant

2

Rouse sent Plaintiff another letter explaining that since he had decided not to relocate to Indianapolis, he would be forced to separate from ACE. (Compl. ¶ 18; Ex. B, Rouse Letter.) Plaintiff claims that ACE attempted to bully him through the February 18 letters into voluntarily accepting a separation from ACE with unacceptable financial conditions. (Compl. ¶ 16.) The February 18 letter from Rouse stated that Plaintiff had until February 24, 2016 to accept the separation benefits and sign a general release. (*Id.*) The separation agreement and release required Plaintiff to release any claims against ACE and prohibited him from providing testimony about the unfair treatment he experienced or observed at ACE. (*Id.* ¶ 17.) According to Plaintiff, the separation and release agreement violated his contract with ACE allowing him to work remotely and also violated his court ordered Joint Parenting Agreement. (*Id.* ¶ 20.) Rouse sent Plaintiff another letter on February 23, 2016 with the same release and separation language that required him to accept the separation by March 1, 2016. (*Id.* ¶ 19.) Julia Moses, a Caucasian female, was allowed to work remotely from Texas, while Plaintiff and another African-American employee, Rommell Hynes, were terminated for refusing to relocate. (*Id.*)

According to Plaintiff, he is not the first ACE employee who ACE treated unfairly due to his or her race, religion, or gender. (*Id.* ¶ 21.) Plaintiff alleges that ACE pressured Dr. Linetta Durand, a Seventh Day Adventist, into working on a Saturday in violation of her religious beliefs. (*Id.* ¶ 22.) Plaintiff believes Dr. Durand reached a settlement with ACE in relation to this matter. (*Id.*) Plaintiff alleges that Amber Ying also reached a settlement with ACE in relation to a race discrimination claim. (*Id.* ¶ 23.)

Plaintiff filed EEOC Charge 470-2016-01138 against ACE on February 25, 2016. (*Id.* ¶ 24.) On February 29, 2016, Defendants Landry and Byland called Plaintiff and left him a telephone message advising him that he should not report to work, effective immediately. (*Id.* ¶

25.) ACE terminated Hynes the same day. (*Id.*) Plaintiff alleges that ACE also restricted Plaintiff's access to the ACE computer systems, forced Plaintiff to return his ACE-issued laptop computer, and advised him to look for other employment. (*Id.*)

Plaintiff claims that, at the time of his termination, ACE maintained a Google domain account, and Plaintiff had access to this account as an administrator. (*Id.* ¶ 27.) Because ACE had recently separated from its parent company and also lost a number of administrators, Plaintiff was the sole remaining administrator with access to ACE's Google domain account. (*Id.* ¶ 28.) Plaintiff's login ID and password were saved on his ACE laptop, and at some point in June 2016, after ACE terminated Plaintiff, ACE became aware that they could no longer access the Google domain account. (*Id.* ¶¶ 29-30.) Several ACE employees and administrators contacted Plaintiff and requested that he help them access the account, but Plaintiff, who was no longer an ACE employee, refused to assist them. (*Id.* ¶ 31.) Plaintiff alleges that ACE did not offer to pay Plaintiff for his assistance, despite the fact that ACE had previously paid a Caucasian employee, Eric Korb, a sizeable consultant fee to perform services for ACE after he separated from the company. (*Id.* ¶ 32.)

Following Plaintiff's refusal to assist ACE in accessing the Google domain account, ACE filed a lawsuit against Plaintiff in Indiana state court charging him with interference with a contract, stealing trade secrets, conversion, breach of fiduciary duty, and other violations of state law. (*Id.* ¶¶ 33-34.) The Indiana lawsuit also sought an injunction requiring Plaintiff to provide his login information to the Google domain account. (*Id.* ¶ 35.) The Indiana state court entered a number of orders against Plaintiff, including an August 3, 2016 order to show cause for failure to comply with a temporary restraining order, which threatened Plaintiff with incarceration. (*Id.* ¶ 37.) ACE, through its attorneys, the law firm Jackson Lewis, filed the lawsuit against Plaintiff in

Indiana, although Jackson Lewis has an office in Chicago and Plaintiff is an Illinois resident who has never lived in Indiana. (*Id.* ¶¶ 36, 38-39.) Plaintiff alleges that he has been unemployed since April 2016 and cannot afford to defend himself in the Indiana lawsuit. (*Id.* ¶ 40.) Plaintiff claims that the Indiana state court action should be removed to this Court in the interest of both justice and convenience to the parties. (*Id.* ¶ 42.)

Plaintiff alleges that ACE subjected him to discriminatory treatment in several ways, including:

- Paying Plaintiff less than Caucasian employees who performed the same job
- Allowing Plaintiff to work as an Interim Manager when the Department Manager was absent, but then promoting a Caucasian employee with less experience to Department Manager when the position became available
- Holding secret meetings to hide discriminatory promotion plans
- Terminating Plaintiff due to his complaints about discrimination and then fabricating a pretextual reason to terminate him
- Requiring Plaintiff to relocate to Indianapolis
- Refusing to allow Plaintiff and other African-American employees to participate in training offered to non-African-American employees
- Creating a hostile work environment for African-Americans by demoting African-American employees and reducing their pay
- Attempting to bully Plaintiff into voluntarily resigning and into releasing all his claims against ACE
- Demanding, under threat of lawsuit, that Plaintiff work for ACE without compensation

(*Id.* ¶ 43.) Plaintiff claims that through the above actions, ACE subjected him to a hostile work environment that ultimately resulted in his termination. (*Id.* ¶¶ 44-46.) According to Plaintiff, ACE did not terminate him for failing to relocate to Indianapolis. Instead, ACE terminated him in retaliation for complaining about discriminatory treatment and did not terminate other similarly situated non-African-American employees despite their not relocating. (*Id.* ¶¶ 49-52.)

## **LEGAL STANDARD**

Under Rule 12(b)(3), a party may move for dismissal of an action that is filed in an improper venue. *See* Fed. R. Civ. P. 12(b)(3). Once a defendant challenges the plaintiff's choice

5

of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district. *See Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *2 (N.D. Ill. Mar. 28, 2014). Under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, No. 14-2484, 2016 WL 4245497, at *5 (7th Cir. Aug. 11, 2016) (emphasis in original); *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (courts may consider matters outside of the pleadings in deciding a venue motion). Against a Rule 12(b)(3) challenge, the court must resolve any factual disputes and draw all reasonable inferences in the plaintiff's favor. *See Gilman*, 2014 WL 1284499 at *2. When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a).

## ANALYSIS

Defendants argue that the Court should dismiss Plaintiff's Complaint for improper venue pursuant to Rule 12(b)(3). In the alternative, Defendants contend that Court should transfer the case to the District Court for the Southern District of Indiana pursuant to 28 U.S.C. §§ 1406(a) or 1404(a). The Court considers each argument in turn.

**I.     Venue**

The Court first considers Defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3). Here, Plaintiff's Title VII claim is the source of the Court's original jurisdiction. (Compl. ¶ 4.) Title VII contains its own venue provision, 42 U.S.C. § 2000e–5(f)(3), and that provision "is not simply a supplement to 28 U.S.C. § 1391; it is the exclusive venue provision for all Title VII . . . actions." *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, at *11 (N.D. Ill. May 22, 2012) (quoting *Gwin v. Reynolds & Reynolds Co.,* No. 01 C 770, 2001 WL 775969, at *1 (N.D. Ill. Jul.10, 2001). Accordingly, despite

Plaintiff's references to the general venue provision, 28 U.S.C. § 1391, in her Response, because Plaintiff brought this action pursuant to Title VII, "venue is determined pursuant to the statute's exclusive venue provision without consideration of 28 U.S.C. § 1391." *Powell v. Sparrow Hosp.,* No. 09 C 3239, 2010 WL 582667, at *2 (N.D. Ill. Feb.12, 2010). Under this provision, venue is proper (1) in any judicial district in the state in which the unlawful employment practice is alleged to have been committed; (2) in the judicial district in which the employment records relevant to such practice are maintained and administered; or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(f)(3). The provision also states that if the "respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." *Id.* Plaintiff need only satisfy one of these requirements to demonstrate that venue is proper in the Northern District of Illinois. *Nathan*, 2012 WL 1886440, at *11. Here, Plaintiff argues that venue is proper under all conditions listed in Title VII's venue provision, but the Court addresses only the third provision because it is dispositive.

As noted above, under Title VII's venue provision, venue is proper "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(f)(3). Courts in this District and elsewhere have held that venue is proper in Title VII cases in the district where the plaintiff was working before being terminated and where the plaintiff would have continued to work had he not been terminated as the result of discriminatory conduct. In *Digan v. Euro-Am. Brands, LLC*, No. 10-CV-799, 2010 WL 3385476, at *1-3 (N.D. Ill. Aug. 19, 2010), for example, the defendant, a New Jersey company, moved to dismiss the plaintiff's Title VII claim for improper venue because the defendant was located in New Jersey, made all its employment decisions in New

Jersey, and did not have offices in Illinois. The court found that venue was proper in Illinois under 42 U.S.C. § 2000e–5(f)(3) because the plaintiff, who was the company's Midwest Regional Sales Manager, "lived and worked in Illinois, [ ] received notice of her termination [ ] in Illinois, and [ ] would have continued to work in Illinois had she not been terminated. *Id.* at *3.

Similarly, in *Graham v. Spireon, Inc.*, No. 14-CV-00131, 2014 WL 3714917, at *1-2 (N.D. Ill. July 25, 2014), the plaintiff, a sales manager whose company allowed him to work remotely in Illinois and who serviced clients located largely in Illinois, argued venue was proper in Illinois under 42 U.S.C. § 2000e–5(f)(3). The court found that venue was proper in Illinois because the facts showed that the plaintiff "was living and working in Illinois [and had been for 10 years] and would have continued to do so if he had not been terminated." *Id.* at *2-3. The court reasoned that the plaintiff alleged that he worked out of a home office in Illinois and often traveled for work out of Chicago airports, with expenses paid for by the defendant, his employer. *Id.* The court found the plaintiff's allegations sufficient to show that he "worked in Illinois and would have continued to do so if he had not been terminated." *Id.* at *2. *See also Nathan*, 2012 WL 1886440, at *11 (finding venue proper because plaintiff would "have continued to work in Northern District of Illinois but for the alleged unlawful employment practice").

Here, Defendants do not dispute that Plaintiff had been working for ACE in the Northern District of Illinois for several years, first from ACE's office here and later remotely from his home. Nevertheless, Defendants argue that they decided to eliminate Plaintiff's remote position and relocate that position to Indianapolis, and as a result, regardless of any alleged unlawful employment practice, Plaintiff would not have continued working in Illinois after April 1, 2016, when ACE planned to relocate his position. Plaintiff claims, however, that ACE's relocation

8

plan was in fact a retaliatory action with the goal of terminating him. Plaintiff argues that ACE only planned to relocate his position because he complained about discrimination, and had ACE not discriminated and retaliated against him, he in fact would have been able to continue working for ACE in Chicago as he had for several years. In support of this claim, Plaintiff alleges that he worked for ACE in Chicago for over eight years, and in recent years, he had operated under a written contract allowing him to, like the plaintiff in *Graham*, work remotely from his home in Illinois. (Compl. ¶¶ 7, 11.) Also, like in *Digan*, ACE addressed Plaintiff's notice of termination to him in Illinois. (*Id.*, Rouse Letter 1.) Plaintiff also alleges that ACE continued to allow other employees to work remotely, even after he was terminated, suggesting that he could in fact have continued to work in Illinois had ACE not terminated him. While Defendants dispute some of these facts and argue that Plaintiff was aware of ACE's relocation plans prior to making his complaint, at this stage the Court must resolve any factual disputes and draw all reasonable inferences in Plaintiff's favor. *See Gilman*, 2014 WL 1284499 at *2. Accepting the Complaint's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently alleged that he would have worked in the Northern District of Illinois but for ACE's alleged unlawful employment practice.

Accordingly, venue is proper in the Northern District of Illinois under 42 U.S.C. § 2000e–5(f)(3).

## II.  Motion to Transfer Venue Under 28 U.S.C. § 1406

Defendants also argue that the Court should transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1406. That statues provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been

brought." 28 U.S.C. § 1406(a). Here, for the reasons discussed above, venue in the Northern of District is proper, and accordingly transfer under 28 U.S.C. 1406(a) is not appropriate in this case. *Prestar Fin. Corp. v. Infraegis, Inc.*, No. SACV 09-899 AG RNBX, 2009 WL 3425348, at *2 (C.D. Cal. Oct. 19, 2009) ("Because venue in [this district] is therefore proper . . . transfer is not mandated by § 1406(a)").

### III. Motion to Transfer Venue Under 28 U.S.C. § 1404

"In 1948, Congress enacted the federal change of venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). More specifically, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under Section 1404(a), the moving party bears the burden of establishing that (1) venue is proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and witnesses and is in the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219.

Here, as discussed above, venue is proper under 42 U.S.C. § 2000e–5(f)(3) in the Northern District of Illinois, but venue would also be proper under that provision in the Southern District of Indiana.[1] While Plaintiff has sufficiently alleged that he would have worked in

---

[1] In her Response brief, Plaintiff argues that the Court cannot transfer this case because this is not a diversity case and in support, cites to a case applying 28 U.S.C. § 1391, the general venue provision.

10

Illinois but for ACE's alleged unlawful employment practice, venue is also proper in Indiana because it is likely, given that ACE is headquartered in Indianapolis, that the employment records relevant to ACE's employment practices are maintained and administered there. Therefore, the Court turns to whether transfer will serve the convenience of the parties and witnesses and promote the interests of justice. In making this determination, the Court looks to both the private and public interests. *See Research Automation*, 626 F.3d at 978; *Nalco Co v. Envtl. Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010). Private interests include: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience to the witnesses and parties. *See Research Automation*, 626 F.3d at 978; *Nalco*, 694 F. Supp. 2d at 998. Factors traditionally considered in the public interest analysis, also known as the "interest of justice" factors, include the congestions of the respective court dockets, prospects for a speedy trial, and the courts' familiarity with the applicable law. *See Research Automation*, 626 F.3d at 978. District courts may make any necessary factual findings when determining venue issues. *See In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008).

   A. **Public Interest Factors**

      1. **Plaintiff's Choice of Forum**

Traditionally, the plaintiff's choice of forum is a factor that weighs in favor of the plaintiff in evaluating a motion for transfer of venue. In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981), the Supreme Court noted that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public

---

(Pl.'s Response to Defs.' Mot. to Dismiss 14) (citing *Unis Intern. Corp. v. Hansen Cartridge Co.*, No. 93 C 0765, 1994 WL 110175, at *10 (N.D. Ill. Mar. 29, 1994). As discussed above, however, this is a Title VII case and as such, § 1391 does not apply, and in any event, 28 U.S.C. § 1404—the transfer statute— does not have a diversity requirement.

interest factors clearly point towards trial in the alternative forum." *See also In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 663–64 (7th Cir. 2003) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). That deference is lessened, however, when "the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). Here, Plaintiff's choice of forum, the Northern District of Illinois, is his home forum. Further, while Defendants claim that none of the relevant conduct occurred in this District, Plaintiff worked for ACE in Illinois, first at ACE's Illinois office and later remotely from his home, and ACE communicated employment related decisions to Plaintiff at his Illinois address, so there is in fact a fairly strong connection in Illinois to the facts giving rise to the litigation. Accordingly, this factor weighs against transfer.

### 2. Situs of Material Events

Defendants argue that the material events in this case occurred entirely in Indianapolis because ACE's corporate headquarters is there, that is where ACE wanted to Plaintiff to relocate, and when Plaintiff refused to relocate, ACE employees in Indianapolis made the decision to terminate Plaintiff. Plaintiff responds that Illinois is also a key situs of the material events in this case because Plaintiff worked in Illinois, ACE communicated with Plaintiff in Illinois, and ACE has long had offices and employees in Illinois.

Contrary to Defendants' argument, in Title VII cases, courts recognize that the location where the employee suffered from the unlawful employment practice is a key situs of material events. In *Pryor v. United Air Lines, Inc.*, No. 12-CV-5840, 2013 WL 4506879, at *7 (N.D. Ill. Aug. 23, 2013), for example, the court found that a Title VII case should be transferred to Virginia because even though the employment decision may have been made at the defendant's

corporate headquarters in Chicago, the plaintiff-employee felt the effects of the relevant employment decision in Virginia. The court reasoned that "the effects of [the defendant's] alleged harassment, discrimination, and retaliation were felt by [p]laintiff where she lived and worked," not at the location of the corporate headquarters. *Id.* Similarly, in *Nathan*, 2012 WL 1886440, at *19, the court denied the defendant's motion to transfer in part because it found that the situs of material events in relation to the plaintiff's Title VII claim was in Illinois, where the plaintiff lived and worked. The court explained, "[e]ven assuming *arguendo* that all relevant employment decisions were made outside Illinois, neither Florida nor California constitute the situs of all material events because Nathan lived and worked in Illinois and felt the effects of [the defendant's] unlawful conduct here. *Id. See also Digan,* 2010 WL 3385476, at *4 (explaining that there is "authority in this district for determining that venue is proper in the location in which a plaintiff felt the effects of a decision made in another district.").

Here, as in *Pryor* and *Nathan*, while ACE may have made the alleged unlawful employment decisions at its corporate headquarters in Indianapolis, Illinois is a more substantial situs of material events because Plaintiff "lived and worked in Illinois and felt the effects of [Defendants'] unlawful conduct here." *Nathan*, 2012 WL 1886440, at *19. Accordingly, this factor weighs against transfer, but because the situs of material events is not concentrated in either venue, this factor is afforded reduced weight. *Id.*

### 3. Relative Ease of Access to Sources of Proof

Defendants argue that litigating this case in Indiana would make it easier to access sources of proof because the relevant employment records are located in Indianapolis and several of the ACE witnesses are located in Indiana. Plaintiff acknowledges that many of the relevant documents are in Indiana, but contends, as several courts in this district have found, that it is

13

fairly easy to transmit relevant documents electronically, so this factor should be neutral. *See, e.g.*, *Pryor*, 2013 WL 4506879, at *6 (finding that ease of access to proof is a neutral factor because documents from corporate headquarters could be easily and electronically transferred to other locations); *Handler v. Kenneth Allen & Assocs., P. C.,* 2011 WL 1118499, at *3 (N.D.Ill. Mar.24, 2011) (where "documents are easily transferrable, access to proof is a neutral factor") (citation omitted); *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F.Supp.2d 902, 912 (N.D. Ill. 2006) ("When documents are easily transferable, access to proof is a neutral factor."). Here, some sources of proof may be in Indiana, but this factor is neutral because any documents located there will be easily transferable to this District.

### 4. Convenience to the Witnesses and Parties

"Convenience to the witnesses is the factor often viewed as having the most weight in determining whether to transfer venue." *St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 C 5484, 2006 WL 1543275, at *4 (N.D. Ill. June 1, 2006) (citations omitted). "When evaluating this factor, the Court must examine 'the nature and quality' of each proposed witness's testimony . . . [and] whether the witnesses are likely to appear voluntarily, whether they will be subject to compulsory process, and whether they are experts, whose attendance is controlled by the party who hired them." *Toriumi v. Ritz–Carlton Hotel Co., LLC,* No. 06 C 01720, 2006 WL 3095753, at *2 (N.D. Ill. Oct. 27, 2006) (citations omitted). "Vague generalizations concerning potential witnesses are insufficient . . . [and] the party seeking transfer on the grounds of witness convenience must clearly specify the key witnesses to be called and include a generalized statement about what their testimony will include." *St. Paul Fire*, WL 1543275, at *4. Additionally, "the convenience of employee witnesses is given less

14

weight than the convenience of non-party witnesses." *Rorah v. Petersen Health Care*, No. 13 C 01827, 2013 WL 3389063, at *4 (N.D. Ill. July 8, 2013).

Defendants argue that because many of the ACE employee witnesses reside in Indianapolis and because Plaintiff's proposed comparators—Rommel Hayes, Julia Moses, Rick Gahering, Linetta Durand, and Amber Ying— do not live in Illinois, this factor weighs in favor of transfer to Indianapolis. As several courts have noted, however, "the convenience of employee witnesses is given less weight than the convenience of non-party witnesses," *Rorah*, 2013 WL 3389063, so the fact that some ACE employee witnesses may reside in Indianapolis does not weigh heavily in favor of transfer. Further, while two comparator witnesses reside in Indianapolis, the other comparators all reside in other states—Moses and Hayes reside in Texas and Durand resides in Ohio. Additionally, two of the individual ACE Defendants, Landry and Rouse, reside in other states as well. Accordingly, this factor weighs only slightly in favor of transfer to Indianapolis.

### B. Private Interest Factors

As noted above, factors traditionally considered in the public interest analysis, also known as the "interest of justice" factors, include the congestions of the respective court dockets, prospects for a speedy trial, and the courts' familiarity with the applicable law. *See Research Automation*, 626 F.3d at 978. Defendants argue that these factors favor transfer because the Southern District of Indiana's docket is less congested than this District's docket. While the Southern District of Indiana's docket may be slightly less congested than the Northern District of Illinois's, this Court's specific docket is not congested, and any potential efficiencies achieved by transferring the case will be undermined by the delay caused by the transfer and the time it takes the transferee court to become familiar with the issues in this case. Additionally, both this

15

Court and the Southern District of Indiana are equally familiar with Title VII, so this factor is neutral.  Ultimately, the private interest factors are neutral.

### C.  Defendants Have Not Met Their Burden

Defendants have shown that some of the factors slightly favor a transfer to Indianapolis, however, Plaintiff has also set forth several compelling reasons to have this case remain in this District.  On balance, Defendants have not convinced the Court that the factors favor transfer and therefore, the Court denies Defendants' Motion to Transfer Venue.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss in its entirety.

**Dated:**  June 5, 2017

_____
AMY J. ST. EVE
United States District Court Judge