**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TRIANO WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 1:16-cv-11746** |
| ) | |
| **AMERICAN COLLEGE OF EDUCATION,** ) | **Honorable Judge Gary Feinerman** |
| **INC, SHAWNTEL LANDRY, in her Individual** ) | |
| **Capacity, HOWARD ROUSE, in his Individual** ) | |
| **Capacity, and KK BYLAND, in her Individual** ) | |
| **Capacity,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

Defendant, American College of Education, Inc., by and through their attorneys, Gregory Andrews and Sabreena El-Amin, of Jackson Lewis P.C., pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 37(e), respectfully submits the following memorandum of law in support of their motion for sanctions due to Plaintiff's willful spoliation of evidence.

## I.    INTRODUCTION

As a result of Plaintiff's intentional spoliation, American College of Education (the "College") is unable to secure electronically stored information and files that are vital to its defense of this case. Forensic evidence demonstrates that after Plaintiff's separation from his employment with the College, he repeatedly accessed the computer issued to him by the College and files saved on that computer. Before returning the computer to the College, Plaintiff intentionally installed a new operating system on his computer and deleted critical information that was stored on the

computer's hard drive. Plaintiff now relies on documents allegedly saved on this computer in multiple discovery responses and to support, at minimum, his claims for discrimination, retaliation and defamation. According to Plaintiff's discovery responses, key electronically stored information related to the timing of his complaints of discrimination, communications with other allegedly aggrieved employees, and information related to Plaintiff's administrative access to the College's Google account was stored on his computer. After a forensic review, it is clear that this information is no longer stored on the computer. In his recent deposition Plaintiff doubled-down on the spoliation in this case, when he falsely testified that he did not install a new operating system on the laptop before returning it to ACE and he again claimed that his evidence of discrimination was on the laptop. Finally, in response to a recent discovery dispute. Plaintiff *admitted* that he has not only deleted emails from his personal email accounts, but he *continues* to delete them. These nearly unprecedented circumstances warrant the most severe sanctions – Plaintiff's case should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

The College hired Plaintiff in 2007 as a Desktop Support employee. At the time he was hired, Plaintiff worked in the College's Chicago, Illinois office until it closed in 2011. From 2011 until he decided not to relocate to Indianapolis, Plaintiff was permitted to work remotely from his home in the Chicago area. In November 2012, Plaintiff was promoted to the position of Systems Administrator in the Information Technology ("IT") Department. In this role, Plaintiff was responsible for the day-to-day operation support for College's IT systems.

On February 12, 2016, the College announced that the IT team would be moving on-site effective April 1, 2016. The College offered Plaintiff a relocation package or, if he elected not to relocate, a separation package. Plaintiff declined the College's relocation package and believed his separation package was inadequate. Thus, Plaintiff accepted neither offer and discontinued his

2

employment relationship with the College. Because Plaintiff, as a remote IT employee, had access to confidential, federally protected student information, the College terminated his access to the its network on February 29, 2017, but, under the terms of his severance offer, paid him until his contemplated separation date of April 1, 2016. (FAC ¶ 29) Plaintiff was told he should focus his efforts on finding a new job in light of his decision not to relocate to Indianapolis. (*Id*).

Despite having his network access terminated on February 29, 2017, Plaintiff continued accessing the College's computer. (Declaration of John Evans, (hereinafter, "Evans Decl.") Exh. A.) Plaintiff also plugged a USB storage device into the laptop on February 29, 2017 and March 3, 2017. (Evans Decl., Exh. A) On March 28, 2016, at 1:56 p.m., a new operating system was installed on Plaintiff's laptop. (*Id.*) According to the forensic expert who examined Plaintiff's laptop, "[t]he reinstallation of Windows is a manual process that requires human intervention. It is not something that happens automatically and it requires affirmative action by the person who is conducting the installation."[1] (*Id.*) As a result, "files stored on the hard drive prior to the reinstallation may be overwritten. It is not possible to tell what data was overwritten, and once data is overwritten, it is no longer recoverable." (*Id.*) Notably, "[o]n March 28, 2016 prior to the re-install, approximately 20 files were opened and none of those files are present on the computer. It is likely these items were deleted prior to the re-install." (*Id.*) The forensic analyst was able to identify over 10,000 deleted items on the laptop, but these files cannot be recovered. During his deposition, Plaintiff claimed that he did not delete any documents from the laptop. (Transcript of Deposition of Triano Williams at ¶¶ 83:5-9). Plaintiff also alleged he did not install a new

---

[1] Plaintiff has offered myriad excuses for the deleted evidence, including that the College used "remote access" to delete his hard drive. Not only would the College have no reason to alter his lap top hard drive after shutting off Plaintiff' access on February 29, 2016, the forensic expert "found no evidence to indicate that re-installation of Windows on 3/28/16 was done remotely." (Evans Decl., Ex. A).

operating system after February 29, 2016. (*Id.* at ¶¶ 32:15-17; 156:14-19). In light of the forensic evidence, it is clear that Plaintiff's testimony is false and that he perjured himself.

### A.     The Preservation Notices and Obligations

On February 29, 2016, Plaintiff's counsel, Calvita Frederick, sent a demand letter to College president, Shawntel Landry. (Declaration of Scott James Preston ("Preston Decl."), ¶ 4, Exh. A.) Counsel for the College responded to the February 29 letter on March 10, 2016. Counsel for the College conveyed two salient points. First, "[t]he College has repeatedly asked Mr. Williams to return his company property, including his completer and other related items. He has continued to ignore that request. I ask that you direct him to return the College's property immediately." (Preston Decl. ¶ 5, Exh. B.) Second:

> "The College asks that you remind Mr. Williams that he has affirmative obligations to preserve any and all electronic and paper documents that are relevant to his claims, his separation and his employment with the College. *This not only includes preserving his company property without destruction, but also any personal email, text messages or other forms of communication that he has had with other current and former College employees*…"

(*Id.*) (emphasis added).

On April 19, 2016 – some three weeks *after* installing a new operating system on his College laptop – Plaintiff contacted the College and "asked for "a box …to put the laptop in" because they "wanted to charge [him] at the [F]ed[E]x office for one." (Declaration of KK Byland, ¶ 4 Exh. A ("Byland Decl.")) A shipping box was sent to Plaintiff on April 21, 2016. (*Id.*) Plaintiff returned his laptop to the College via Federal Express on May 10, 2016. (Byland Decl. ¶ 6). While the Federal Express shipping box was not damaged, Plaintiff's laptop was returned with physical damage.[2] (*Id.*)

---

[2] Plaintiff has suggested the damaged lap top was the College's fault because, when it provided Plaintiff with the FedEx box, it did not provide packing material. Plaintiff also has argued that the College somehow changed the operating system upon receipt, but the Forensic Expert found that only one Operating System was installed – on March 28 – by Plaintiff.

B.    The Previous Action in Marion County, Indiana

At the time Plaintiff decided not to relocate to Indianapolis, he was the sole administrator of the College's email account (hosted by Google), which was used by its students to communicate with the College and conduct their coursework.  Current and former College students also hosted on the drive and, as teachers, used the drive to host their lesson plans and other documents used in their teaching positions.  When the College began receiving complaints from current and former students that they were unable to access their email accounts and documents, the College contacted Google to resolve the issue.

Google, however, advised the College that because Plaintiff was the sole administrator for the Google drive, only Plaintiff could reinstate the account and that without Plaintiff's assistance, the account could not be restored.  The College requested the login information multiple times from Plaintiff, but he claimed that his login administrator username and password to access the Google drive was "autosaved" on his work laptop, which he returned to the College.  As discussed, because Plaintiff intentionally installed a new operating system before returning his laptop, however, the data was destroyed and lost.  Plaintiff's attorney then offered his assistance but not unless the College paid him $200,000.[3]  "Once the Settlement Check is received in my office and the funds are cleared, I am confident Mr. Williams can assist the College in reinstating the Google account."  [Dkt. 59-6]

On July 19, 2016, the College filed suit against Plaintiff in Marion County Superior Court.  Plaintiff refused to appear claiming the court did not have jurisdiction over him,   (Preston Decl. ¶

---

[3] The College eventually learned from Google that Plaintiff had reset the Google account so that the account's "recovery" email address was his personal address.  Google records revealed that Plaintiff accessed the Google account at least once after his lap top had been returned to the College.  This information has never been produced in discovery because, according to Plaintiff, he set his email "on auto delete every 30-90 days and in addition Plaintiff cleans out his email on a regular basis."  (Preston Decl. ¶ 10 Exh. G.)  This is yet another example of Plaintiff failing to preserve relevant email and intentionally deleting it after filing his lawsuit.

8, Exh. E). His lawyer, who never filed a motion to challenge the court's jurisdiction after the summons and complaint were properly served, chose to ignore the case completely despite the fact that Plaintiff was actively litigating his child support case in Indiana at the same time. [Dkt. 26-2] On September 19, 2017, the Marion County Superior Court entered default judgment against the plaintiff and ordered Plaintiff to provide the College with the username and password for the Google drive or, alternatively, contact Google to have the administrator access turned over to the College. [Dkt. 13-1] Plaintiff ignored that order, too. On September 28, 2017, the Court held a damages hearing and, on October 3, 1017, entered final judgment in the amount of $248,350.00. [*Id.*]

### C.   Allegations in Plaintiff's Amended Complaint

Plaintiff filed this action on December 30, 2017 against the College and individual defendants Shawntel Landry, KK Byland and Howard Rouse.[4] [Dkt. 4] Plaintiff's complaint alleges claims for discrimination, retaliation, and negligent supervision. Plaintiff filed an Amended Complaint on October 14, 2017, adding a claim of defamation per se against all defendants (and attaching news articles as Exhibits 11, 12 and 13 and the judgment from the Marion County Action). [Dkt. 59] Plaintiff also added an allegation regarding the "improper judgment" the College obtained against Plaintiff in the Marion County Action. [Dkt. 59 ¶ 39]

In relation to his claims of discrimination and retaliation, Plaintiff alleges he and his former coworkers were subjected to discrimination while employed with the College. He alleges he complained about this discrimination through a letter he sent the College in February 2017

---

[4] On November 6 2017, individual defendants Landry, Byland and Rouse filed a Motion to Dismiss for lack of personal jurisdiction. [Dkts. 63, 64, 65] After Plaintiff's counsel failed to appear at the Status Conference on November 4, 2017 [Dkt: 67] the Court ordered Plaintiff to file his opposition by December 1, 2017. (Id.) At the December 7, 2017 hearing, the Court gave Plaintiff additional time, until December 15, 2017, to oppose the motion. [Dkt: 68] Plaintiff's counsel again failed to appear at the December 20, 2017 Status Conference, but the date was not extended [Dkt. 69] and Plaintiff never filed any response to the Motion. On January 22, 2018, the Court granted the motion and dismissed the individual Plaintiffs. [Dkt. 70]. At his deposition, Plaintiff admitted that he was unaware that the individual Plaintiffs had been dismissed.

("Culture Letter"). Specifically, Plaintiff alleges two employees were subjected to discrimination and settled claims with the College, he was denied a promotion based on his race, and he and his coworker's positions were eliminated based on their race. Plaintiff alleges that after he sent the Culture Letter, he and an African American coworker were required to track their time in fifteen minute increments and he was advised that he must relocate or face termination. [Dkt. 43, ¶¶ 13-16] Plaintiff's reliance on the treatment of other former African American employees to advance his theory of a "culture of racism" is a continued theme throughout this case.

### D. Plaintiff Relies Solely on the "Returned Laptop" to Prove His Claims.

Throughout Plaintiff's discovery responses, he alleged that relevant information is no longer in his possession because he returned his laptop to the College. In his Initial Disclosures, Plaintiff identifies a number of former African-American employees who he claims have "knowledge of the facts and circumstances regarding the allegations in the Complaint . . . [including] . . . his employment with ACE . . . his damages . . . and the affect the wrongful termination has had on his life." (Preston Decl. ¶ 6, Ex. C) Among others, they include former African-American employees Amber Ying, Dr. Linetta Durand, Rommel Hynes [sic], and Dr. Sharon Spears, all of whom allegedly have "knowledge of the facts and circumstances regarding the allegations in the Complaint." (*Id.*)

Defendant followed up on Plaintiff's identification of these employees in his initial disclosures and requested all documents between these individuals and Plaintiff regarding the allegations in his complaint. As discussed below, Plaintiff's response is that any correspondence or documents he may have had "were maintained electronically and were accessed via my lap top which was returned." (Preston Decl. ¶ 7, Ex. D) Specifically Plaintiff responded to these interrogatories as follows:

60.     All Documents relating to any communications, including but not limited to email and text messages between you and Rommel Hynes [sic] pertaining to any of the allegations in the complaint.

        **ANSWER:**  See attached, exhibits to the complaint, answer to counterclaim and 26(a)(1).   Documents that may have been contained on my laptop are now unavailable.

61.     All Documents relating to any communications, including but not limited to email and text messages between you and Dr. Linetta Durand pertaining to any of the allegations in the complaint.

        **ANSWER:**  See attached, exhibits to the complaint, answer to counterclaim and 26(a)(1).   Documents that may have been contained on my laptop are now unavailable.

62.     All Documents relating to any communications, including but not limited to email and text messages between you and Amber Ying pertaining to any of the allegations in the complaint.

        **ANSWER:**  See attached, exhibits to the complaint, answer to counterclaim and 26(a)(1). Documents that may have been contained on my laptop are now unavailable.

63.     All Documents relating to any communications, including but not limited to email and text messages between you and any person not employed by the Defendant pertaining to any of the allegations in the complaint.

        **ANSWER:**  See attached, exhibits to the complaint, answer to counterclaim and 26(a)(1).[5]   Documents that may have been contained on my laptop are now unavailable.

Additionally, according to Plaintiff any documents regarding his employment, or efforts to find new employment, were also on his laptop computer, which he returned. Specifically, Plaintiff responded to requests for production as follows:

1.      All Documents that refer or relate in any way to your employment with Defendant, including but not limited to, time records, policies, procedures and personnel documents.

---

[5] Plaintiff produced no documents responsive to this request.  In each of these responses, Plaintiff refers the College to "attached, exhibits to the complaint, answer to counterclaim and 26(a)(1)."  There are no documents responsive to these requests attached to Plaintiff's responses (or otherwise produced) or attached to the exhibits attached to Plaintiff's complaint.  There were no documents attached to her answer to the counterclaim or to her Rule 26(a)(1) initial disclosures.

**ANSWER:** These documents were maintained electronically and were accessed via my laptop which was returned.

2. All Documents relating to your allegation that you "worked nearly 60 hours most weeks, including time spent on call on weekends and holidays," as set forth in Paragraph No. 10 of the Complaint.

**ANSWER:** See attached but most were stored on electronic format with companies ACE contracted with . . . check login times brief period where Plaintiff was made to email time sheets to supervisor via ace.edu email, which is not now accessible to Plaintiff.

15. All documents relating to your allegation that "[t]he login ID and password used by Williams to access the Google email account were AutoSaved on Williams' laptop computer which was returned to ACE, per their [sic] request," as set forth in Paragraph No. 29 of the Complaint..

**ANSWER:** To the extent that any documents related to this issue exists, and are within the Plaintiff's control, they have already been submitted as exhibits to the complaint, counterclaim and/or 26(a)(1) disclosures. Any other documents would be under the control of the Defendant, as related to company and policy and procedure for the return of company property."

65. All Documents reflecting Plaintiff's job duties and responsibilities while he was employed by Defendant.

**ANSWER:** See attached, exhibits to the complaint, answer to counterclaim and 26(a)(1). Documents that may have been contained on my laptop are now unavailable. The information requested is within the control of Defendants and has been requested by the Plaintiff in their discovery but has not yet been provided by the Defendants.

66. All Documents relating to all attempts made by Plaintiff to obtain employment from February 2016 to the present, including but not limited to all employment applications, resumes, correspondence, cover letters, and on-line postings created edited or updated by Plaintiff.
**ANSWER**: Documents that may have been contained on my laptop are now unavailable.

## III.  ARGUMENT

### A.  The Legal Standard

Spoliation occurs when a party destroys evidence relevant to an issue in the case. *Oleksy v. General Electric Co.,* 2011 U.S. Dist. LEXIS 87271, *6 (N.D. Ill. Aug. 8, 2011). As discussed

below, the law provides that a court may impose sanctions for spoliation of evidence under Federal Rule of Civil Procedure 37 or under its own inherent power. *Malibu Media, LLC v. Tashiro*, 2015 U.S. Dist. LEXIS 64281 (S.D. Ind. May 18, 2015) (citing *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp.2d 984, 998 (N.D. Ill. 2005), *aff'd*, 200 F. App'x 592 (7th Cir. 2006)).

On December 1, 2015, Rule 37(e) of the Federal Rules of Civil Procedure set for a new standard for spoliation of electronically stored information. The district court may sanction a party that has failed to take reasonable steps to preserve electronically stored information. If that information should have been preserved during the litigation, but it has been lost and cannot be restored or replaced through additional discovery. FED. R. CIV. P. 37(e). If another party was prejudiced by loss of the information, the court may order measures necessary to cure the prejudice. FED. R. CIV. P. 37(e)(1). Alternatively, if the court finds that a the party that lost the information did so intentionally in order to deprive the other party of the information's use, the court may: instruct the jury that it may (or must) presume that the information was unfavorable to the first party; or dismiss the action or enter a default judgement. FED. R. CIV. P. 37(e)(2). Default judgment is an appropriate sanction where: (1) there is a "clear record of delay or contumacious conduct;" (2) less drastic sanctions have proven ineffective; or (3) a party has demonstrated willfullness, bad faith or fault. *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014 (quoting *Maynard v. Nygren*, 332 F.3d 4762, 467 (7th Cir. 2003); *In re Thomas Consol. Indus., Inc.,* 456 F.3d 719, 724 (7th Cir. 2006)).

Even if Rule 37(e) does not apply to the facts here, the Court can nevertheless exercise inherent authority to remedy spoliation under these circumstances. "It has long been understood that certain implied powers must necessarily result to our Courts from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc*., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)

(quotation, citation omitted). "These powers are 'governed not by rule or statue but by the control necessary vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash Railway Co.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 743 (1962)). One such inherent power is the authority to impose sanctions for the bad faith spoliation of evidence. *See F.T.C. v. Asia Pac. Telecom, Inc.*, 788 F. Supp. 2d 799, 790 (N.D. Ill. 2011) (citations omitted) ("[a] court's inherent power to impose spoliation sanctions arises only if a party destroyed evidence of bad faith. In the context of destroying evidence, 'bad faith' means 'destruction for the purpose of hiding adverse information.'").

### B.  The Rule 37(e)(1) Threshold Spoliation Questions are Satisfied.

New Federal Rule 37(e) contains a five part "winnowing process courts must apply" before considering sanctions. *See Sinder v. Danfoss, LLC*, 2017 U.S. Dist. LEXIS 107591 *8 (N.D. Ill. July 12, 2017). First, the information must be ESI. Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments ("[t]he new rule applies only to electronically stored information . . ."). Second, there must be anticipated or actual litigation which triggers the duty to preserve ESI. Third, in determining what ESI "should have been preserved" "is viewed at the time litigation is anticipated or ongoing, not when it is discovered that ESI was lost. And this prospective standard is from the viewpoint of the party who controls the ESI." *Sinder*, 2017 U.S. Dist. LESIX at *9 (citing *Alabama Aircraft Indus. Inc. v. Boeing Co.*, 2017 U.S. Dist. LEXIS 33527 *27 (N.D. Ala. Mar. 9, 2017)). Fourth, "[t]he ESI must have been (a) lost because (b) a party failed to take (c) reasonable steps to preserve it." *Sinder*, 2017 U.S. Dist. LESIX at *9. And, finally, the ESI "must be unable to be restored or replaced through additional discovery." *Id.* at *10.

If these prerequisites are all satisfied, the court "looks to the prejudice suffered by the party seeking the ESI." *Id.* If the court "finds that the party intended to deprive another party of the use

of ESI (in which case prejudice is presumed) . . . then the court may impose the harsher sanctions available, including presuming that lost ESI was unfavorable, instructing the jury that it may or must presume that information was unfavorable, or entering default or dismissal." *Id.* (citing Fed. R. C. P. 37(e) Advisory Committee Notes, 2015 Amendments). "The rule does not place of proving or disproving prejudice on one party or the other party." Fed. R. Civ. P. 37(e) Advisory Committee Notes, 2015 Amendments.

### 1.  The Spoliation Involves ESI.

If the alleged spoliation involves ESI, then Rule 37(e) applies. In this case, the alleged spoliation occurred when Plaintiff intentionally installed a new operating system on his computer hard drive before returning it to the College. It also occurred when Plaintiff, an IT professional, failed to suspend the "30-90" day auto delete function on his personal email and "on a regular basis" "cleans out" his email. Plaintiff's acts of "human intervention" destroyed the electronically stored information on his personal email and on the College's computer.

### 2.  Plaintiff Had an Affirmative Obligation to Preserve the Destroyed Evidence.

Plaintiff's obligation to preserve evidence was squarely within anticipated or actual litigation. "A party has a duty to preserve evidence over which it has control and reasonably knows or could foresee would be material to a potential legal action." *Bryant v. Gardner,* 587 F.Supp.2d 951, 967 (N.D. Ill. 2008). Thus, a plaintiff can be subject to this duty to preserve evidence prior to filing a lawsuit. *See MacNeil Auto. Products, Ltd. v. Cannon Auto., Ltd.,* 715 F.Supp.2d 786, 801 (the duty to preserve may arise "even prior to the filing of a complaint as long as it is known that litigation is likely to commence"). Indeed, a plaintiff's duty to preserve evidence "is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation." *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America*

*Securities LLC,* 685 F.Supp.2d 456, 466 (S.D.N.Y. 2010). "The scope of the duty to preserve is a broad one, commensurate with the breadth of discovery permissible under Fed. R. Civ. P. 26." *Danis v. USN Communs, Inc.,* 2000 U.S. Dist. LEXIS 16900, *99 (N.D. Ill. Oct. 23, 2000). In this case, Plaintiff's counsel sent College President, Shwantel Landry, a demand letter on February 26, 2016, noting that Plaintiff had already filed an EEOC charge and that he intends to "request a right-to-sue letter for purposes of filing a federal lawsuit in United States District Court." (Preston Decl. ¶ 4, Exh. A) Moreover, in response to Plaintiff's February 26, 2016 letter, counsel for the College specifically informed Plaintiff's counsel that Plaintiff "has affirmative obligations to preserve any and all electronic and paper documents that are relevant to his claims, his separation and his employment with the College." (Preston Decl. ¶ 5 Exh. B) Plaintiff had an affirmative duty to preserve the ESI contained on his personal email and his laptop computer before returning it to the College. Plaintiff most certainly had an obligation to preserve his personal emails and, as an IT professional, to suspend the auto-delete function on his personal emails.

### 3. The Destroyed ESI Is Lost Because Plaintiff Failed to Take Reasonable Steps to Preserve it.

Plaintiff not only failed to take reasonable steps to preserve his personal email and the ESI contained on his laptop, he intentionally and systematically deleted his email and intentionally deleted the data contained on his laptop when he installed a new operating system before he returned it to the College. On February 29, 2016, the College turned off Plaintiff's access to its computer system. (Am. Compl. ¶ 25 [Dkt. 56-1]) Six weeks later, on April 19, 2016, Plaintiff requested a FedEx box to return his laptop because "the [sic] wanted to charge me at the FedEx office for one." (Byland Decl. ¶ 4, Exh. A) Plaintiff returned his laptop to the College via Federal Express on May 10, 2015. (Byland Decl. ¶ 6).

The College's forensic expert John Evans, of D4 LLC, examined Plaintiff's lap top computer and found that while the hard drive shows at formatted date of June 1, 2015, "the current Window's Operating System installation date/time is March 28, 2016 at 1:56 p.m." (Evans Dec., Ex. A at p. 2) Evans opines that "the reinstallation of Windows is a manual process that requires human intervention . . . and it requires affirmative action by the person who is conducting the installation." (*Id*.) Because the data was overwritten due to the installation of a new operating system, "it is not possible to tell what data was overwritten and once data is overwritten, it is no longer recoverable." (*Id*). A person with Plaintiff's experience and knowledge would have been well aware that updating a computer's operating system would have rendered deleted items unrecoverable. Plaintiff assisted in performing such updates for College staff and faculty and would have been familiar with the impact of the installation after a decade of service in the IT department.

Importantly, on March 28, 2016, just before the installation of the new operating system, Plaintiff accessed over 20 files that are no longer present on the laptop. Evans opines further that "[i]t is likely these items were deleted prior to the re-install." (*Id*.) Evans was able to identify that over 10,000 items had been deleted from the laptop before it was returned to the College. (*Id.*) Because of the re-installation, none of these items were recoverable. This means that four weeks after he ceased performing his job duties and sent a formal demand to the College and more than two weeks after the College responded with a notice to preserve, Plaintiff intentionally accessed dozens of files, deleted them, and eliminated all possibilities of recovering the same.

### 4. The Destroyed ESI Cannot be Restored or Replaced through Additional Discovery.

Despite several efforts by the College the data intentionally destroyed by Plaintiff cannot be replicated. When Plaintiff installed a new operating system, "a 'Windows.old' folder [was] created automatically." (Evans Dec., Ex. A at p. 3) Examination by the College's forensic expert

discovered multiple user profile accounts containing "user profile activity and data, including data email." (*Id.*) Among the uncovered accounts were "Triano.Williams" and "triano.willams.ACE." (*Id.*) Of the data recovered from these accounts, *i.e.*, email or documents, none were between Plaintiff and Rommel Haynes that contained discrimination, claims of racial animus alleged in Plaintiff's complaint. The same is true for emails between Plaintiff and Shearon Spears. None were between Plaintiff and Linetta Durand and Plaintiff and Amber Ying. (Evans ¶ j) In other words, other than his correspondence with KK Byland, there are no documents or email located on Plaintiff's hard drive concerning any of the allegations in Plaintiff's Amended Complaint.

The College also attempted to obtain the documents directly from the witnesses via subpoena. Only Haynes had responsive documents. The documents produced by Mr. Haynes contained emails with attachments from plaintiff's personal email addresses, TrianoAW09@live.com and brohiram@gamil.com. (Preston Decl. ¶ 9, Ex. F) These addresses was not recovered on Plaintiff's hard drive and therefore appears to have been deleted. (Evans Dec. ¶ k) They are also not available from Plaintiff because Plaintiff intentionally deleted relevant emails from his personal email accounts. He admittedly failed to suspend his 30-90 day auto-delete function "which he has them on," and also admits to "clean[ing] out his email" on a "regular basis." (Preston Decl. ¶ 10 Exh. G) The production from Mr. Haynes also included drafts of EEOC intake forms and other documents that were not found on his laptop. No emails were recovered from Plaintiff's laptop computer between he and his alleged aggrieved coworkers, and none of these emails were produced in response to the College's discovery requests because Plaintiff intentionally deleted them.

Additionally, no files were found on the computer which would allow Defendant to pinpoint the date of the Ace Culture letter. The timing of this letter is critical to the College's defense of Plaintiff's retaliation claims. Plaintiff alleges that the letter was drafted weeks before

it was received by the College via email and asserts that evidence to support this was located on the laptop. The forensic expert was able to locate a single email containing both Word and PDF versions of the document, but that document was attached to the email sent to Byland. (Evans Dec. ¶ l). The original document has been destroyed along with the highly relevant metadata which would have revealed when the document was created, who created it, and how many prior drafts of the letter exist. The letter "was not located anywhere else on the Williams Laptop and there were no references to this document being opened or saved to the Williams Laptop." (Evans Dec., Ex. A at p. 4).

Plaintiff also claims his laptop computer had his Google password and information "autosaved" on his computer. His recovery email for the Google drive was also "TrianoAW09@live.com" but according to him, that information was only kept on his work laptop which he returned. The lynchpin of Plaintiff's defamation claim is that the College was somehow responsible for alleged defamatory statements to the media regarding Plaintiff's access to the Google drive. By installing a new operating system on his laptop before returning it to the College, the College's defense to this claim has been forever compromised and prejudiced.

Due to Plaintiff's intentional actions, the evidence that the College needs to defend this case has been destroyed. In response to the College's request for this evidence, Plaintiff stated they were attached to his complaint (these weren't), the answer to his counterclaim (also weren't) in response to discovery (not produced), his Rule 26 disclosures (no documents were provided) or "may have been contained on my laptop [which] are now unavailable." Any personal email that is known to exist between Plaintiff and Haynes, Plaintiff and Durand, Plaintiff and Spears and Plaintiff and Ying have all been intentionally destroyed by Plaintiff. It is impossible to know what other documents and communications were contained on Plaintiff's hard drive or his personal

email addresses before he deleted them and there is no way to replicate or recover these documents from any other source.

### D. The College has Been Prejudiced by Plaintiff's Destruction of Evidence.

The College has been insurmountably prejudiced by Plaintiff's destruction of evidence. By willfully deleting his personal email and the data from his laptop computer, Plaintiff destroyed the only and best evidence regarding his communications with those former employees whom he claims support his "culture of racism" theory, any evidence that would pinpoint the date of drafting of the Ace Culture letter, and evidence of the "autosave" of the Google password. The College has taken reasonable measures to uncover the evidence destroyed by Plaintiff, including subpoenaing the allegedly aggrieved employees and securing a forensic expert to uncover files on the laptop based on Plaintiff's misrepresentations in his discovery responses. Despite the College's efforts, no files or metadata relevant to Plaintiff's claims have been recovered. *See Malibu Media, LLC v. Tashiro*, 2015 U.S Dist. Lexis 64281 *101 (N.D. Ind. May 18, 2015) (analyzing case law granting sanctions for the destruction of metadata). Had these emails and documents actually been helpful to the Plaintiff, he presumably would not have destroyed the best and only evidence of them. As previously stated, Plaintiff's intentional actions have deprived the College of the opportunity review potentially relevant files including the items previously indicated. *Malibu Media,* 2015 U.S Dist. Lexis 64281 at *101 (discussing that a party's destruction of metadata deprives the opposing party of "the ability to gain 'the fullest possible knowledge' of the facts relevant to Plaintiff's . . . underlying claim.")

### E. Intentional Destruction of Evidence Warrants Default Judgment under Rule 37(e)(2).

Sanctions are intended to serve one or more of the following purposes: (1) to ameliorate the prejudice caused to an innocent party by a discovery violation; (2) to punish the offending

party; and (3) to deter future misconduct. *Domanus v. Lewicki,* 2012 U.S. Dist. LEXIS 81651, *13 (N.D. Ill. June 8, 2012). The determination whether spoliation occurred requires a two-part inquiry. Default judgement "is strong medicine for discovery abuse." *Domanus*, 742 F.3d at 301. But there are some types of misconduct that place too high a burden on allowing the case to continue, *Dotson v. Bravo*, 321 F.3d 663, 665 (7th Cir. 2003), and Plaintiff's conduct here is egregious enough to warrant default judgment. *See Global Mat. Techs. Inc. v. Dazheng Metal Fibre Co.*, 2016 U.S. Dist. LEXIS 123780 * 32 (N.D. Ill. Sept. 13, 2016) (awarding default judgment as sanction under Rule 37(e) for discovery abuses including intentional spoliation of evidence). Plaintiff was reminded of his duty to preserve on March 10, 2016 and then systematically and intentionally deleted all relevant evidence in this case. Plaintiff deliberately failed to preserve relevant evidence in order to prevent the College from obtaining it and using it against him. Plaintiff repeatedly directs the College to examine the laptop for evidence that he is fully aware no longer exists and admits he deleted any personal email he had in his possession. Plaintiff's deliberate destruction of this evidence should not go unpunished. Default judgment is an appropriate punishment here as Plaintiff has intentionally and willfully destroyed every piece of key evidence to support his claims and has deprived the College of the opportunity to defend the claims against it.

### F.     The Court has Inherent Authority to Sanction the Plaintiff

Even if Rule 37(e) does not apply to the facts here, the Court can nevertheless exercise inherent authority to remedy spoliation under these circumstances. "It has long been understood that certain implied powers must necessarily result to our Courts from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quotation, citation omitted). "These powers are 'governed not by rule or statue but by the control

necessary vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash Railway Co.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 743 (1962)). One such inherent power is the authority to impose sanctions for the bad faith spoliation of evidence. *See F.T.C. v. Asia Pac. Telecom, Inc.*, 788 F. Supp. 2d 799, 790 (N.D. Ill. 2011) (citations omitted) ("[a] court's inherent power to impose spoliation sanctions arises only if a party destroyed evidence of bad faith. In the context of destroying evidence, 'bad faith' means 'destruction for the purpose of hiding adverse information.'").

## IV. CONCLUSION

Based on Plaintiff's spoliation of evidence, this Court should (1) impose sanctions on Plaintiff, dismissing this matter or requiring an assumption that the destroyed evidence was unfavorable to Plaintiff, and (2) grant the College costs and fees associated with the review of the laptop, including the retention of its expert, the attempts to recover information through other means, including preparing subpoenas and reviewing third party productions, and drafting this motion.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order:

(a) Entering the appropriate sanctions against Plaintiff,

(b) Awarding Plaintiff costs, expert fees, and attorneys' fees associated with the incurrence of unnecessary discovery costs and the filing of this motion, and

(c) Staying the current deadline for filing summary judgment motions pending a resolution of this Motion.

Dated: May 23, 2018

Respectfully submitted,

**AMERICAN COLLEGE OF EDUCATION, INC.,**

By:     */s/Gregory Andrews*
                    One of Its Attorneys

Scott James Preston
Melissa K. Taft
Jackson Lewis P.C.
10 West Market Street
Suite 2400
Indianapolis, IN 46204
Phone: (317) 489-6930
Fax: (317) 489-6931
scott.preston@jacksonlewis.com
melissa.taft@jacksonlewis.com

Gregory H. Andrews
Jonathan C. Huckabay
Sabreena El-Amin
Jackson Lewis P.C.
150 N. Michigan Avenue
Suite 2500
Chicago, IL 60601
Phone: (312) 787-4949
Fax:     (312) 787-4995
gregory.andrews@jacksonlewis.com
Sabreena.el-amin@jacksonlewis.com
jonathon.huckabay@jacksonlewis.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, certifies that on May 22, 2018, he caused a true and correct copy of the foregoing **Memorandum of Law in Support of Motion for Spoliation** to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system, including counsel for Plaintiff.


By: ___*/s/Gregory Andrews*___
    One of Its Attorneys